## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

In re:

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]

      Debtors.

_____/

FONTAINEBLEAU LAS VEGAS LLC,

Plaintiff,

v.

BANK OF AMERICA, N.A., et al.,

Defendants.

_____/

Chapter 11

Case No.  09-21481-BKC-AJC

(Jointly Administered)

Adv. Pro. No. 09-01621-ap-AJC

## AFFIRMATION OF JED I. BERGMAN IN SUPPORT OF
## PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

I, Jed I. Bergman, being duly sworn, depose and state under penalty of perjury as follows:

1.      I am a member of the law firm of Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, proposed special litigation counsel to Fontainebleau Las Vegas LLC, plaintiff in the above-captioned adversary proceeding.  I am familiar with the facts of this case.  I submit this affirmation in support of plaintiff's motion for partial summary judgment and related relief.

_____

[1]      The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337], (ii) Fontainebleau Las Vegas, LLC [9332], and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

2.      Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Complaint filed on April 23, 2009 before the District Court of Clark County, Nevada.

3.      Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Amended Complaint filed on May 12, 2009 before the District Court of Clark County, Nevada.

4.      Attached hereto as Exhibit C is a true and correct copy of the Notice of Removal filed by Defendants Bank of America, N.A., Merrill Lynch Capital Corporation, JPMorgan Chase Bank, V.A., Barclays Bank PLC, Deutsche Bank Trust Company Americas, The Royal Bank of Scotland plc, Sumitomo Mitsui Banking Corporation New York, Bank of Scotland and HSH Vordbank AG, New York Branch on May 13, 2009 before the United States District Court of Nevada.

5.      Attached hereto as Exhibit D is a true and correct copy of Plaintiff's Rule 41(a)(1) Notice of Voluntary Dismissal filed on June 9, 2009 before the United States District Court of Nevada.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

New York, New York
June 10, 2009

_____
Jed I. Bergman

# EXHIBIT A

1  **COMP**
   MORRIS PICKERING
2  Steve Morris, Nev. Bar No. 1543
   Email: sm@morrislawgroup.com
3  Jared M. Sechrist, Bar No. 10439
   Email: jms@morrislawgroup.com
4  900 Bank of America Plaza
   300 South Fourth Street
5  Las Vegas, NV 89101
   Telephone: (702) 474-9400
6  Facsimile: (702) 474-9422

7  Marc E. Kasowitz (*pro hac vice pending*)
   David M. Friedman (*pro hac vice pending*)
8  Jed I. Bergman (*pro hac vice pending*)
   Cara M. Ciuffani (*pro hac vice pending*)
9  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
   1633 Broadway
10 New York, New York 10019
   Telephone: (212) 506-1700
11 Facsimile: (212) 500-3425

12 Attorneys for Plaintiff
   FONTAINEBLEAU LAS VEGAS LLC

13                        DISTRICT COURT

14                   CLARK COUNTY, NEVADA

15

16 FONTAINEBLEAU LAS VEGAS LLC,  )   Case No:  A588636
   individually and as successor by )   Dept. No:      XIII
17 merger to FONTAINEBLEAU LAS    )
   VEGAS II, LLC,                 )   **BUSINESS COURT REQUESTED**
18                                 )
                   Plaintiff,      )   **COMPLAINT**
19                                 )
        v.                         )   **EXEMPT FROM ARBITRATION:**
20                                 )   **AMOUNT IN CONTROVERSY**
   BANK OF AMERICA, N.A.; MERRILL  )   **IN EXCESS OF $40,000;**
   LYNCH CAPITAL CORPORATION;      )   **DECLARATORY JUDGMENT**
21 JPMORGAN CHASE BANK, N.A.;      )   **RELIEF REQUESTED**
   BARCLAYS BANK PLC; DEUTSCHE     )
22 BANK TRUST COMPANY              )
   AMERICAS; THE ROYAL BANK OF     )
23 SCOTLAND PLC; SUMITOMO          )
   MITSUI BANKING CORPORATION      )
24 NEW YORK; BANK OF SCOTLAND;     )
   HSH NORDBANK AG, NEW YORK       )
25 BRANCH; CAMULOS MASTER          )
   FUND LP; MB FINANCIAL BANK,     )
26 N.A.,                           )
                                   )
27                  Defendants.    )
   _____)

28          Plaintiff Fontainebleau Las Vegas, LLC ("Plaintiff" or "Fontainebleau"), as

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

and for its complaint against defendants Bank of America N.A., Merrill Lynch

FILED

2009 APR 23  P 4: 30

Capital Corporation, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Company Americas, The Royal Bank of Scotland PLC, Sumitomo Mitsui Banking Corporation New York, Bank of Scotland, HSH Nordbank AG, New York Branch, Camulos Master Fund LP, and MB Financial Bank, N.A. (collectively the "Banks" or the "Revolver Banks"), alleges, upon knowledge as to itself and otherwise upon information and belief, as follows:

**Preliminary Statement**

1.      This case arises from the breach by a group of unscrupulous banks of their clear and unequivocal written promise to Fontainebleau to finance the construction of its multi-billion-dollar casino-resort development project in Las Vegas (the "Project") -- a promise in exchange for which the Banks have already secured for themselves tens of millions of dollars in fees.  As a result of that breach -- and absent an order of specific performance by this Court of the Banks' obligations -- the Project, which was nearing completion, is doomed to failure, and thousands of Las Vegas residents will lose their jobs.

2.      The governing loan agreements provide for $1.85 billion of bank financing for the Project under two term loan facilities and a revolving loan facility.  The banks obligated to provide the term loan financing have substantially complied with their obligations to date, by providing over $1,000,000,000 in funding.  However, the Revolver Banks, which are obligated to provide $790,000,000 in revolver financing (the "Revolving Loan") -- one other revolver lender, with a $10 million commitment, is in FDIC receivership and is not part of this action -- have unjustifiably failed and refused to do so.

3.      On April 20, 2009, the Revolver Banks notified Fontainebleau by letter that they would not honor their commitments under the loan agreement.  Instead, they purported to "terminate[]" those commitments, ostensibly based on "one or more" unspecified "Events of Default."

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 2 of 22

4.      In fact, there has been no Event of Default, and there is no contractual basis whatsoever for the Revolver Banks' breach of their clear and unambiguous obligations.  The purported termination is nothing more than the Banks' baseless attempt to walk away from the Project and abandon their obligations.

5.      The Banks' brazen breach of contract threatens to cause imminent and irreparable harm to Fontainebleau, including forcing Fontainebleau to stop construction of the Project, which will disrupt Fontainebleau's existing business and contractual relationships and damage the Fontainebleau brand.

6.      The Banks' breach will also cause enormous harm to the public interest.  In addition to the approximately 3,300 construction workers on-site daily (plus the additional 1,700 workers who would be needed to work on the final stages of the Project) and hundreds of others presently employed by the Project, the opening of the Fontainebleau Las Vegas is expected to result in over 6,000 full-time jobs at the facility, and approximately 2,000 additional jobs elsewhere in Las Vegas.  All of these sources of employment will vanish as a result of the Banks' breach -- a further blow to a local economy that, in the words of the Las Vegas Sun, is in "freefall" and may be in for its "longest recession since the Great Depression."

7.      The Revolver Banks' wrongful breach of their obligation to loan Fontainebleau $800 million is all the more egregious in light of the tens of _billions_ of dollars that certain of the Revolver Banks have received from the federal government's Troubled Asset Repurchase Program ("TARP").  Defendant Bank of America, N.A., has to date received a total of $52.5 billion dollars in federal assistance (including funds received in connection with its acquisition of Merrill Lynch & Co., Inc., the corporate parent of defendant Merrill Lynch Capital Corporation) and JPMorgan Chase has received $25 billion dollars in federal assistance.  These TARP and other funds were provided to the Banks with one purpose:  to ensure that these Banks would begin lending again, and would

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 3 of 22

1    continue to lend, rather than further constricting the flow of credit that is

2    absolutely critical for any economic recovery. But instead of lending -- instead of

3    standing by the contractual commitments to which they already agreed and are

4    legally bound -- the defendant Banks have seized upon a false pretext -- a

5    nonexistent unspecified "Event of Default" -- in a vain attempt to escape their

6    obligations.

7           8.    The Revolver Banks' misconduct here was calculated, intentional and

8    malicious. Defendants abandoned their lending commitments solely to try to

9    extricate themselves from a loan they no longer wish to make, notwithstanding

10   that those commitments are clear, unequivocal, and binding, and that Plaintiff and

11   thousands of employees and their families are relying on those commitments to be

12   performed.

13          9.    Accordingly, Fontainebleau by this action seeks specific performance

14   of the Revolver Banks' obligations, as well as declaratory relief establishing that

15   the April 20 purported termination of their commitments was improper and that

16   the Revolver Banks are obligated to meet their funding commitments. In addition,

17   although damages alone cannot compensate for the loss of irreplaceable financing

18   for its unique resort, Fontainebleau seeks recovery from the Revolver Banks of all

19   damages resulting from the Banks' bad faith breach of their obligations, including

20   consequential damages arising from the Revolver Banks' bad faith and wrongful

21   conduct, totaling in the billions of dollars.

22   <center>**PARTIES**</center>

23         10.    Fontainebleau is a Nevada limited liability company, with its

24   principal place of business at 2827 Paradise Road, Las Vegas, Nevada 89109.

25   Plaintiff is also the successor by merger to Fontainebleau Las Vegas II, LLC, a

26   Florida limited liability company. This action is not removable because there is no

27   complete diversity of citizenship between Fontainebleau and the Defendants. For

28

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

diversity purposes, Fontainebleau is a citizen of New York, Delaware, North Carolina, Illinois, and numerous other jurisdictions.

11.    Defendant Bank of America, N.A. ("Bank of America"), is a nationally chartered bank with its main office in Charlotte, North Carolina. Bank of America is committed to fund $100 million under the Revolving Loan.

12.    Defendant Merrill Lynch Capital Corporation is a Delaware corporation with a principal place of business in New York. Merrill Lynch Capital Corporation, which is now indirectly owned by Bank of America, is committed to fund $100 million under the Revolving Loan.

13.    Defendant JPMorgan Chase Bank, N.A. is a nationally chartered bank with its headquarters in New York, New York. JPMorgan Chase Bank, N.A is committed to fund $90 million under the Revolving Loan.

14.    Defendant Barclays Bank PLC is a public limited company in the United Kingdom with its principal place of business in London, England. Barclays Bank PLC is committed to fund $100 million under the Revolving Loan.

15.    Defendant Deutsche Bank Trust Company Americas is a New York State-chartered bank with its principal office in New York, New York. Deutsche Bank Trust Company Americas is committed to fund $80 million under the Revolving Loan.

16.    Defendant The Royal Bank of Scotland PLC is a banking association organized under the laws of the United Kingdom with a branch in New York, New York. The Royal Bank of Scotland PLC is committed to fund $90 million under the Revolving Loan.

17.    Defendant Sumitomo Mitsui Banking Corporation New York is a Japanese corporation with offices in New York, New York. Sumitomo Mitsui Banking Corporation New York is committed to fund $90 million under the Revolving Loan.

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 5 of 22

18.     Defendant Bank of Scotland is chartered under the laws of Scotland, with its principal place of business in Edinburgh, Scotland.  Bank of Scotland is committed to fund $72.5 million under the Revolving Loan.

19.     Defendant HSH Nordbank AG, New York Branch is a German banking corporation with a branch in New York, New York.  HSH Nordbank AG, New York Branch is committed to fund $40 million under the Revolving Loan.

20.     Defendant Camulos Master Fund LP is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Camulos Master Fund LP is committed to fund $20 million under the Revolving Loan.

21.     Defendant MB Financial Bank, N.A. is a nationally chartered bank with its main office in Chicago, Illinois.  MB Financial Bank, N.A. is committed to fund $7.5 million under the Revolving Loan.

## THE FACTS

**A.     The Fontainebleau Las Vegas Project**

22.     The "Fontainebleau" brand is one of the most high-profile names in the lodging industry today, known for combining striking design, contemporary art, music, fashion and technology into a vibrant and unique guest experience. The Project seeks to leverage the name recognition and brand value associated with the Fontainebleau Miami Beach hotel, an iconic property that recently reopened, after a one billion dollar investment, to enormous publicity, rave reviews and receipt of the 2008 Americas Lodging Investment Summit (ALIS) award for Development of the Year.  Even under the present economic environment, Fontainebleau Miami Beach is performing at the top of its competitive set.

23.     The Project is designed to be a destination casino-resort on the north end of the Las Vegas Strip, situated on approximately 24.4 acres.  The Project consists of a 63-story glass skyscraper featuring over 3,800 guest rooms, suites and condominium units; a 100-foot high three-level podium complex housing

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 6 of 22

casino/gaming areas, restaurants and bars, a spa and salon, a live entertainment theater and a rooftop pool; and a 353,000 square-foot convention center.

24.    The Project will also feature high-end retail space (the "Retail Space") of approximately 286,500 square-feet including retail shops, restaurants, and a nightclub.  The Retail Space is being developed by indirect subsidiaries of Fontainebleau's parent company ("Fontainebleau Retail"), funded by separate loans (the "Retail Financing").

25.    Plaintiff broke ground on the Project in January 2007, and today the Project is approximately 70% complete.

**B.    The Lenders And The Loan Agreements**

26.    On June 6, 2007, Plaintiff entered into a credit agreement (the "Credit Agreement") with a syndicate of lenders, including Bank of America as administrative agent (the "Administrative Agent") and disbursement agent (the "Disbursement Agent"), whereby the Banks and other lenders agreed to loan $1.85 billion under three senior secured credit facilities (collectively, the "Credit Facilities").  The first was a $700 million dollar term loan facility with a seven-year maturity (the "Initial Term Loan").  The second was a $350 million dollar delay draw term loan facility with a seven-year maturity (the "Delay Draw Term Loan").  The third, intended to enable Plaintiff to complete construction and open the Project, was the $800 million Revolving Loan with a six-year maturity.  Plaintiff also issued $675 million in second-mortgage notes with an eight-year maturity (the "Notes").  As is customary in such financings, and as the Revolver Banks understood, Fontainebleau entered into these loan agreements with the expectation that the revenue generated by the completed Project would permit it to satisfy its repayment obligations.

27.    Also on June 6, 2007, Fontainebleau, certain of its affiliates, and the Project's lenders, including the Revolver Banks, entered into the disbursement agreement (the "Disbursement Agreement").  The Disbursement Agreement sets

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

forth the order of funding under the Credit Facilities, the Notes, and the Retail Financing, and the related conditions to providing Fontainebleau with advances under the various facilities.

28.    The $700 million Initial Term Loan was funded in full upon execution of the Credit Agreement.  To date, $336.7 million of the $350 million Delay Draw Term Loan has been funded.

29.    The credit facilities provide two related mechanisms for funding the Project.  First, the submission of a notice of borrowing ("Notice of Borrowing") obligates the Banks to transfer the requested funds into an account (the "Bank Proceeds Account") that is subject to the Disbursement Agreement.  Second, Fontainebleau must submit an advance request ("Advance Request"), typically monthly, to secure disbursements from the Bank Proceeds Account that it can then use to pay the costs of the Project.

30.    As consideration for their promise to provide Fontainebleau with financing when called upon to do so, the Revolver Banks were paid tens of million of dollars in fees at the June 2007 closing.  In particular, defendants Bank of America, Merrill Lynch, Deutsche Bank, and Barclays PLC served as co-lead arrangers and joint underwriters with respect to the Credit Facilities, and were compensated accordingly.

31.    In addition to these fees, several of the Revolver Banks have also been the beneficiaries of billions of dollars in federal TARP funds that are intended, as then-Treasury Secretary Paulson has explained, to induce banks to "deploy, not hoard, their capital.  And we expect them to do so ....".  For example, defendant Bank of America has received $52.5 billion dollars in government assistance to date, JPMorgan Chase $25 billion, and MB Financial Bank N.A. $196 million.  But instead of deploying their capital, the Revolver Banks have reneged on their existing commitments to Fontainebleau.

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1.    **The Credit Agreement**

32.    Under the Credit Agreement, the Revolver Banks are obligated to disburse loan proceeds into the Bank Proceeds Account upon receiving from Fontainebleau a Notice of Borrowing specifying the amount of the Revolving Loan requested.

33.    The Credit Agreement also sets forth the only conditions to the Revolver Banks' funding obligation in response to a Notice of Borrowing. Section 2.1(c) of the Credit Agreement provides that "[t]he making of Revolving Loans which are Disbursement Agreement Loans to the Bank Proceeds Account shall be subject **only** to the fulfillment of the applicable conditions set forth in Section 5.2 ...." (Emphasis in original.)

34.    Under Section 5.2 of the Credit Agreement, the only pertinent conditions to the Revolver Banks' obligations to fund the Revolving Loans are:

> (a) Notice of Borrowing.  Borrowers shall have submitted a Notice of Borrowing specifying the amount and Type of the Loans requested, and the making thereof shall be in compliance with the applicable provisions of Section 2 of this Agreement.
>
> . . .
>
> (c) Drawdown Frequency.  Except for Loans made pursuant to Section 3 with respect to Reimbursement Obligations, Loans made pursuant to this Section shall be made no more frequently than once every calendar month unless the Administrative Agent otherwise consents in its sole discretion.

No representations, warranties, or certifications are required, and the lack of an Event of Default as defined in Section Eight of the Credit Agreement is not a condition precedent.  In any event, no such Event of Default has occurred here.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 9 of 22

## 2.    The Disbursement Agreement

35.    The Disbursement Agreement sets forth Fontainebleau's material obligations to develop, construct and complete the Project, and Fontainebleau Retail's obligation to develop, construct and complete the Project's retail component.  The Disbursement Agreement also establishes the conditions to, and the relative sequencing of, disbursements from the proceeds of, among other things, the Revolving Loan, the Retail Financing and the Notes.  The Disbursement Agreement also establishes the obligations of the various agents to make disbursements to Fontainebleau of loan proceeds from the Bank Proceeds Account.

## C.    Defendants' Breaches Under the Loan Agreements

36.    The Revolver Banks have repeatedly breached their obligations under the Credit Agreement.

### 1.    Refusal To Honor The March 2009 Notice of Borrowing

37.    On March 2, 2009, Fontainebleau submitted a Notice of Borrowing for all of the funds remaining in the senior credit facilities, comprising $350 million under the Delay Draw Term Loan and $670 million under the Revolving Loan (the "March 2 Notice").  Under the Credit Agreement, funding under the March 2 Notice was required by the next day, March 3, 2009.

38.    Instead, the next day, Bank of America, as Administrative Agent, notified Fontainebleau by letter (the "March 2 Bank Letter") that it would not process the March 2 Notice, purportedly because it did not comply with Section 2.1(c) (iii) of the Credit Agreement, which provides that "unless the Total Delay Draw Commitments have been fully drawn, the aggregate outstanding principal amount of all Revolving Loans and Swing Line Loans shall not exceed $150,000,000."

39.    That same day, Fontainebleau advised Bank of America by letter that the March 2 Bank Letter was in error and urged Bank of America to reconsider

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 10 of 22

(the "March 3 Letter"). Plaintiff also submitted an amended Notice of Borrowing to correct a scrivener's error, clarifying that the amount sought under the Revolving Loan was actually $656.52 million (the "March 3 Notice"). As the March 3 Letter correctly explained, the Credit Agreement only limits the amount of the Revolving Loan that can be outstanding unless the Term Loan has been fully drawn; it does not prohibit a Notice of Borrowing that -- like the March 2 Notice -- in fact does fully draw down the Term Loan such that the Notice can also draw upon more than $150,000,000 under the Revolving Commitments. By fully drawing the Term Loan, the Notice of Borrowing itself removed the limitation on the amount of the Revolving Loan that may be drawn.

40.    On March 4, 2009, Bank of America again wrote to Fontainebleau stating that it had formed an ad hoc steering committee (the "Steering Committee") with other lenders (purportedly constituting a majority in interest of the lenders under the Credit Agreement) and that this unspecified self-selected group of lenders "unanimously" concurred that the March 2 Notice did not conform to the Credit Agreement requirements.

41.    Fontainebleau responded in a March 6, 2009 letter (the "March 6 Letter"), again pointing out that the interpretation of the Credit Agreement advanced by Bank of America was incorrect. Certain other lenders under the Credit Agreement advised Fontainebleau that they also disagreed with the Steering Committee's interpretation.

42.    In light of the ongoing need to pay for the costs of the Project, Fontainebleau submitted an amended Notice of Borrowing on March 9, 2009 (the "March 9 Notice"), drawing only the $350 million remaining under the Term Loan. Fontainebleau specifically reserved its right to contest the Administrative Agent's decision to deny, and the Revolver Banks' refusal to provide, funding under the Revolving Loan.

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

43.    Section 1.1 of the Credit Agreement defines a "Lender Default" as "the failure or refusal (which has not been retracted in writing) of a Lender to make available (i) its portion of any Loan required to be made by such Lender hereunder…"

44.    The Revolver Banks' failure and refusal to fund the Revolving Loan in response to the March 2 Notice and March 3 Notice is a Lender Default under the express terms of the Credit Agreement.

2.    **Improper "Termination" Of The Revolving Loan Commitments**

45.    At or about the time that Bank of America informed Fontainebleau that various lenders had formed the Steering Committee, certain of the Revolver Banks determined that they would not honor their commitments to Fontainebleau, and began to seek a pretext on which to renege. On March 6, 2009, Bank of America sent Fontainebleau, on behalf of the Steering Committee, a letter purporting to raise certain questions and seek information about the Project, and proposing a meeting and tour of the Project. In response, on March 16, 2009, Fontainebleau advised Bank of America that it would host such a meeting, but that neither holding such a meeting nor providing such information was a condition precedent to the Banks' compliance with the Notice of Borrowing, and that accordingly the Revolver Banks were still in default with respect to the March 2 and March 3 Notices.

46.    A meeting was held at the Project site on March 20, 2009, attended by certain Revolver Banks and other lenders. At the meeting, Fontainebleau provided the lenders with a presentation about the Project, additional information, and a site tour.

47.    On March 25, 2009, Fontainebleau finalized the documentation in support of its March Advance Request. Bank of America, as Disbursement Agent authorized the release of $138 million from the Bank Proceeds Account.

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

48.    Shortly thereafter, in early April, Fontainebleau began gathering the relevant data to be submitted in connection with its April Advance Request. As part of this process, Fontainebleau determined that, under the definitions and criteria in the Credit Agreement and Disbursement Agreement, the remaining costs to complete the project (the "Remaining Costs") appeared to exceed the available loan funds ("Available Funds"), and as a result the Project at that time likely could not satisfy the test that remaining costs and available funds be in balance (the "In Balance Test"), as required under the Disbursement Agreement.

49.    On April 13, 2009, Fontainebleau provided its lenders with notice, pursuant to the Disbursement Agreement and other loan documents (the "April 13 Notice") that as of that date, it did not believe that the Project satisfied the In Balance Test. The April 13 Notice made no reference whatsoever to the March Advance Request. Under the Disbursement Agreement, failure to satisfy the In Balance Test is _not_ an Event of Default and does not preclude the submission and funding of a notice of Borrowing; at most, it only delays the ability to draw funds from the Bank Proceeds Account, pursuant to an Advance Request, to pay the costs of the Project.

50.    Following the April 13 Notice, Fontainebleau and its lenders (including the Revolver Banks) held a meeting on Friday, April 17, in New York, to discuss the status of the Project and plans for its completion. On Monday, April 20, as a follow-up to that meeting, the Steering Committee's counsel sent a letter on behalf of "a number of Steering Committee institutions," including certain Revolver Banks, to Fontainebleau's counsel (the "April 20 Letter"). The April 20 Letter requested additional information based on the April 17 meeting, including "[a]n assessment of the March In Balance Test" -- an implicit concession that these lenders did not believe they had sufficient information to determine whether the In Balance Test had been satisfied as of March.

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

51.    Only hours later, and before any response by Fontainebleau, the Revolver Banks sent Fontainebleau a letter (the "Termination Letter") asserting that "one or more Events of Default have occurred" under the Credit Agreement, but utterly failing to identify any particular Event of Default.  The Termination Letter also contended that the Total Revolving Commitments -- i.e., the $800 million Revolving Loan commitments (less the $10 million that is the subject of an FDIC receivership, and which is not at issue here) -- were "terminated effective immediately."

52.    The next day, April 21, 2009, Fontainebleau's counsel advised the Revolver Banks' counsel by letter that there had been no Event of Default under the Credit Agreement, that the Termination Letter was ineffective and a nullity, and that unless the Revolver Banks withdrew the Termination Letter immediately, Fontainebleau would pursue all available remedies.

### 3.    Refusal To Honor The April 21, 2009 Notice of Borrowing

53.    Also on April 21, 2009, Fontainebleau provided Bank of America, as Administrative Agent, with a Notice of Borrowing (the "April 21 Notice") that complied with all applicable conditions under the Credit Agreement, seeking $710 million in Revolving Loans.  The amount of the Notice of Borrowing -- $710 million -- reflects certain adjustments to the full $790 million in Revolver Loan commitments at issue here that do not alter or diminish Fontainebleau's right to those total commitments.  Under the Credit Agreement, the April 21 Notice was required to be funded by 12:00 noon on April 23, 2009.

54.    The Revolver Banks have once again breached their obligations under the Credit Agreement by failing to honor the April 21 Notice.

### D.    The Revolver Banks' Breaches Will Cause Irreparable Harm To Plaintiff And The Las Vegas Economy.

55.    The Revolver Banks' breach of their obligations will cause extensive and irreparable harm to Plaintiff.

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

56.    The Project is roughly 70% complete, and significant work remains to be performed. The Project has now been deprived of access to at least $710 million in financing that is crucial to completion. Without these funds -- which cannot be replaced in today's economic environment -- the Project cannot be finished and will never open. Construction will cease, contractor liens will accrue, and revenues from the Project will never be realized.

57.    A collapse of the Project -- caused by the Revolver Banks' failure to fund -- would trigger similar consequences with respect to the Fontainebleau Retail development.

58.    Furthermore, the goal of the development of the Project was to build a unique destination casino-resort which would translate the successful Fontainebleau image, brand and reputation earned in Miami to the Las Vegas Strip. The Project thus was intended to expand further the Fontainebleau brand and generate new business opportunities. The Revolver Banks' breach of their commitments and resulting failure of the Project will substantially tarnish Fontainebleau's business, brand image, and reputation.

59.    The Revolver Banks' breach of their obligations will also cause extensive and irreparable harm to Clark County and the Las Vegas economy. Currently, southern Nevada faces one of the most significant economic challenges in its modern history. Unemployment has spiked to more than 10 percent and the annual job loss rate is 4.8 percent and climbing. Southern Nevada's hotels and casino-hotels directly employed an average of 176,100 workers in 2008 but as of January 2009 this number fell to 164,700 -- a loss of 11,400 jobs. It is undeniable that the interest of the public is best served by the completion of the Project. If the Revolver Banks' breach forces the Project to shut down, there would be a profound impact on the community and the already reeling Las Vegas economy.

60.    At the upcoming peak of its construction cycle, the Project is expected to employ more than 5,000 workers and generate nearly $41 million dollars per

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

month in wages and benefits to southern Nevada households. Under the current plans, the finished Project will employ over 6,000 people directly and an additional 2,000 indirect regional jobs. Moreover, the Project would result in substantial public revenues, including property tax payments of $1.1 million per acre per year and $73 million dollars in tax and fee payments annually.

61.     The failure of the Revolver Banks to honor their financial commitments to the Project places the completion of this hotel and casino in serious jeopardy. Should the Project fail, the aforementioned benefits would not be realized, thousands of jobs would be lost, millions of dollars in tax revenue would evaporate, and Clark County would likely sink further into economic recession.

**E.     Plaintiff Has No Adequate Remedy At Law**

62.     Specific performance of the Revolver Banks' obligations is required, and entirely appropriate, because Plaintiff lacks an adequate remedy at law.

63.     Damages would not be an adequate remedy at law because alternative financing cannot be obtained. The terms of the Revolving Loan negotiated in June 2007 cannot be replicated in today's financial markets, and $790 million in comparable revolver financing for a Las Vegas construction project cannot be obtained.

64.     Specific performance is also appropriate because the Project concerns real property. No other parcel of land, and no other development, could possibly substitute for the Fontainebleau Las Vegas. If the Revolver Banks' breaches cause Fontainebleau to lose the Project, that loss cannot adequately be remedied in damages.

65.     The harm to Fontainebleau is also irreparable because the Banks' wrongdoing threatens to damage Fontainebleau's reputation and brand image. These highly valuable assets are being and will be harmed by the Revolver Banks'

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 16 of 22

spurious claim that an Event of Default has occurred; that reputational and business harm cannot be undone.

## FIRST CAUSE OF ACTION

### (Breach of the Credit Agreement -- Failure to Fund the Revolving Loans in March 2009)

66.    Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 65 hereof.

67.    The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks agreed to fund $800 million in Revolving Loans.

68.    The March 2 Notice, as amended by the March 3 Notice (together, the "March Notice of Borrowing") submitted by Fontainebleau complied with all applicable conditions under the Credit Agreement.  At the time of the March Notice of Borrowing, Fontainebleau had performed all obligations required of it to be performed.

69.    Pursuant to the terms of the Credit Agreement, the Revolver Banks were, and continue to be, obligated to honor the March Notice of Borrowing.

70.    The Revolver Banks' failure to honor the March Notice of Borrowing constitutes a material breach of their obligations under the Credit Agreement.

71.    By refusing to comply with their obligations under the Credit Agreement, the Revolver Banks have also breached the covenant of good faith and fair dealing implied in every contract that, like this one, is governed by New York law.

72.    There is a real and substantial controversy between Fontainebleau, on the one hand, and the Revolver Banks, on the other hand.  Expeditious resolution of this controversy is both necessary and appropriate.

73.    Fontainebleau has no adequate remedy at law for the Revolver Banks' breaches, and will be irreparably harmed thereby.

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 17 of 22

74.    Accordingly, Fontainebleau is entitled to a decree of specific performance compelling the Banks to provide the Revolving Loans in accordance with the March Notice of Borrowing.

75.    While damages would not adequately compensate Plaintiff for the harm caused by the Revolver Banks' breaches, Plaintiff also is entitled to damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Breach of the Credit Agreement -- Improper Termination of Commitments)**

76.    Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 75 hereof.

77.    The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks agreed to fund $800 million in Revolving Loans.

78.    In the Termination Letter, the Revolver Banks have taken the position that as of April 20, 2009, one or more Events of Default have occurred.  The Revolver Banks failed to identify any such Event of Default.

79.    No Event of Default under the Credit Agreement has occurred, and that the Termination Letter is ineffective and a nullity.  By repudiating their obligations, the Revolver Banks have breached the Credit Agreement.

80.    There is thus a real and substantial controversy between Fontainebleau, on the one hand, and the Revolver Banks, on the other hand, as to the validity of the Termination Letter.  Expeditious resolution of this controversy is both necessary and appropriate.

81.    Accordingly, Fontainebleau is entitled to a judgment declaring that as of April 21, 2009, (i) no Event of Default had occurred under the Credit Agreement; (ii) the Credit Agreement was in full force and effect, including with respect to the Revolver Banks, and (iii) the Termination Letter was ineffective and a nullity.

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 18 of 22

82. Fontainebleau has no adequate remedy at law for the Revolver Banks' breaches, and will be irreparably harmed thereby.

83. Accordingly, Fontainebleau is entitled to a decree of specific performance compelling the Banks to continue to comply with their obligations under the Credit Agreement.

84. While damages would not adequately compensate Fontainebleau for the harm caused by the Revolver Banks' breaches, Fontainebleau also is entitled to damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**(Breach of the Credit Agreement -- Failure to Fund the Revolving Loans in April 2009)**

85. Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 84 hereof.

86. The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks agreed to fund $800 million in Revolving Loans.

87. The April 21 Notice of Borrowing submitted by Fontainebleau complied with all applicable conditions under the Credit Agreement. At the time of the April 21 Notice, Fontainebleau had performed all obligations required of it to be performed.

88. Pursuant to the terms of the Credit Agreement, the Revolver Banks were, and continue to be, obligated to honor the April 21 Notice.

89. The Revolver Banks' failure to honor the April 21 Notice constitutes a material breach of their obligations under the Credit Agreement.

90. By refusing to comply with its obligations under the Credit Agreement, the Revolver Banks have also breached the covenant of good faith and fair dealing implied in every contract that, like this one, is governed by New York law.

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 19 of 22

91.    There is a real and substantial controversy between Fontainebleau, on the one hand, and the Revolver Banks, on the other hand.  Expeditious resolution of this controversy is both necessary and appropriate.

92.    Fontainebleau has no adequate remedy at law for the Revolver Banks' breaches, and will be irreparably harmed thereby.

93.    Accordingly, Fontainebleau is entitled to a decree of specific performance compelling the Banks to provide the Revolving Loans in accordance with the April 21 Notice.

94.    While damages would not adequately compensate Fontainebleau for the harm caused by the Revolver Banks' breaches, Fontainebleau also is entitled to damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Equitable Estoppel)

95.    Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 94 hereof.

96.    The Revolver Banks led Fontainebleau to believe that they would comply with their obligations to provide the Revolving Loans by, among other things, continuing to engage in dialogue as to the status of the project, requesting information from Fontainebleau, attending meetings with Fontainebleau, and otherwise acting as if they still intended to perform under the Credit Agreement. At no time prior to April 20, 2009 did the Revolver Banks state or give any indication that they believed an Event of Default had occurred.

97.    In this manner, the Revolver Banks confirmed to Fontainebleau that they would provide the Revolving Loans when presented with a compliant Notice of Borrowing, and concealed the material fact that they had already determined not to perform their obligations.  The Revolver Banks intended, or reasonably should have expected, that Fontainebleau would rely on their representations and omissions. In relying on the legitimate expectation of ongoing funding, Plaintiff

MORRIS PETERSON
ATTORNEYS AT LAW
-00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

continued to incur substantial construction-related expenses and make ongoing commitments to vendors and other tradespeople and its employees.

98.   Fontainebleau thus relied on the Revolver Banks' representations to its detriment, by incurring millions of dollars of costs and committed spending based on the expectation that the Revolver Banks would honor their commitments and fund those expenditures.  Fontainebleau did not know, and had no way of knowing, that the Revolver Banks were planning to breach the Credit Agreement.

99.   As a direct and proximate cause of the Revolver Banks' failure to honor their own representations regarding the Revolving Loans, Fontainebleau has been injured.

100.   Accordingly, although monetary damages would be inadequate to compensate Fontainebleau for its injury, Fontainebleau is entitled to damages, including consequential damages, in an amount to be determined at trial.

101.   WHEREFORE, Fontainebleau demands judgment against the Revolver Banks, and each of them,

(a)   On the First, Second, Third and Fourth Causes of Action, decreeing specific performance by the Revolver Banks of their obligations under the Credit Agreement and related documentation, including providing the Revolving Loans pursuant to the March 2 Notice of Borrowing and the April 21 Notice of Borrowing;

(b)   On the First, Second, Third, and Fourth Causes of Action, awarding Fontainebleau damages in an amount to be determined at trial, but in no event less than three billion dollars;

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

(c)  On the Second Cause of Action, declaring that as of April 21, 2009: (i) no Event of Default had occurred under the Credit Agreement; (ii) the Credit Agreement was in full force and effect, including with respect to the Revolver Banks, and

(iii) the Termination Letter was ineffective and a nullity;

(d)  Awarding Fontainebleau the costs and disbursements of this action, including attorneys' fees; and

(e)  Awarding Fontainebleau such other and further relief as this Court may deem just and proper.

MORRIS PETERSON

By: _____

MORRIS PICKERING
Steve Morris, Nev. Bar No. 1543
Jared M. Sechrist, Bar No. 10439
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

Marc E. Kasowitz (*pro hac vice pending*)
David M. Friedman (*pro hac vice pending*)
Jed I. Bergman (*pro hac vice pending*)
Cara M. Ciuffani (*pro hac vice pending*)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019

Attorneys for Plaintiff
FONTAINEBLEAU LAS VEGAS LL

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 22 of 22

# EXHIBIT B

1 | **ACOM**
MORRIS PETERSON
2 | Steve Morris, Nev. Bar No. 1543
Email: sm@morrislawgroup.com
3 | Jared M. Sechrist, Bar No. 10439
Email: jms@morrislawgroup.com
4 | 900 Bank of America Plaza
300 South Fourth Street
5 | Las Vegas, NV 89101
Telephone: (702) 474-9400
6 | Facsimile: (702) 474-9422

7 | Marc E. Kasowitz (*pro hac vice pending*)
David M. Friedman (*pro hac vice pending*)
8 | Jed I. Bergman (*pro hac vice pending*)
Cara M. Ciuffani (*pro hac vice pending*)
9 | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
10 | New York, New York 10019
Telephone: (212) 506-1700
11 | Facsimile: (212) 506-1800

12 | Attorneys for Plaintiff
FONTAINEBLEAU LAS VEGAS LLC

**FILED**

MAY 12   1 51 PM '09

*[signature]*

CLERK OF THE COURT

13 | DISTRICT COURT

14 | CLARK COUNTY, NEVADA

16 | FONTAINEBLEAU LAS VEGAS LLC, ) Case No: A588636
individually and as successor by ) Dept. No: XIII
17 | merger to FONTAINEBLEAU LAS )
VEGAS II, LLC, ) **BUSINESS COURT REQUESTED**
18 | Plaintiff, ) **AMENDED COMPLAINT**
19 | v. )
)
20 | BANK OF AMERICA, N.A.; MERRILL ) **EXEMPT FROM ARBITRATION:**
LYNCH CAPITAL CORPORATION; ) **AMOUNT IN CONTROVERSY**
21 | JPMORGAN CHASE BANK, N.A.; ) **IN EXCESS OF $40,000;**
BARCLAYS BANK PLC; DEUTSCHE ) **DECLARATORY JUDGMENT**
22 | BANK TRUST COMPANY ) **RELIEF REQUESTED**
AMERICAS; THE ROYAL BANK OF )
23 | SCOTLAND PLC; SUMITOMO )
MITSUI BANKING CORPORATION )
24 | NEW YORK; BANK OF SCOTLAND; )
HSH NORDBANK AG, NEW YORK )
25 | BRANCH; MB FINANCIAL BANK, )
N.A., )
26 | )
)
27 | Defendants. )
)

28 | Plaintiff Fontainebleau Las Vegas, LLC ("Plaintiff" or "Fontainebleau"), as

and for its complaint against defendants Bank of America N.A., Merrill Lynch

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
20 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Capital Corporation, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Company Americas, The Royal Bank of Scotland PLC, Sumitomo Mitsui Banking Corporation New York, Bank of Scotland, HSH Nordbank AG, New York Branch, and MB Financial Bank, N.A. (collectively the "Banks" or the "Revolver Banks"), alleges, upon knowledge as to itself and otherwise upon information and belief, as follows:

## Preliminary Statement

1.      This case arises from the breach by a group of unscrupulous banks of their clear and unequivocal written promise to Fontainebleau to finance the construction of its multi-billion-dollar casino-resort development project in Las Vegas (the "Project") -- a promise in exchange for which the Banks have already secured for themselves tens of millions of dollars in fees. As a result of that breach -- and absent an order of specific performance by this Court of the Banks' obligations -- the Project, which was nearing completion, is doomed to failure, and thousands of Las Vegas residents will lose their jobs.

2.      The governing loan agreements provide for $1.85 billion of bank financing for the Project under two term loan facilities and a revolving loan facility. The banks obligated to provide the term loan financing have substantially complied with their obligations to date, by providing over $1,000,000,000 in funding. However, the Revolver Banks, which are obligated to provide $770,000,000 in revolver financing (the "Revolving Loan") have unjustifiably failed and refused to do so.

3.      On April 20, 2009, the Revolver Banks notified Fontainebleau by letter that they would not honor their commitments under the loan agreement. Instead, they purported to "terminate[]" those commitments, ostensibly based on "one or more" unspecified "Events of Default."

4.      In fact, there has been no Event of Default, and there is no contractual basis whatsoever for the Revolver Banks' breach of their clear and unambiguous

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

obligations.  The purported termination is nothing more than the Banks' baseless attempt to walk away from the Project and abandon their obligations.

5.      The Banks' brazen breach of contract threatens to cause imminent and irreparable harm to Fontainebleau, including forcing Fontainebleau to stop construction of the Project, which will disrupt Fontainebleau's existing business and contractual relationships and damage the Fontainebleau brand.

6.      The Banks' breach will also cause enormous harm to the public interest.  In addition to the approximately 3,300 construction workers on-site daily (plus the additional 1,700 workers who would be needed to work on the final stages of the Project) and hundreds of others presently employed by the Project, the opening of the Fontainebleau Las Vegas is expected to result in over 6,000 full-time jobs at the facility, and approximately 2,000 additional jobs elsewhere in Las Vegas.  All of these sources of employment will vanish as a result of the Banks' breach -- a further blow to a local economy that, in the words of the Las Vegas Sun, is in "freefall" and may be in for its "longest recession since the Great Depression."

7.      The Revolver Banks' wrongful breach of their obligation to loan Fontainebleau $770 million is all the more egregious in light of the tens of *billions* of dollars that certain of the Revolver Banks have received from the federal government's Troubled Asset Repurchase Program ("TARP").  Defendant Bank of America, N.A., has to date received a total of $52.5 billion dollars in federal assistance (including funds received in connection with its acquisition of Merrill Lynch & Co., Inc., the corporate parent of defendant Merrill Lynch Capital Corporation) and JPMorgan Chase has received $25 billion dollars in federal assistance.  These TARP and other funds were provided to the Banks with one purpose:  to ensure that these Banks would begin lending again, and would continue to lend, rather than further constricting the flow of credit that is absolutely critical for any economic recovery.  But instead of lending -- instead of

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
10 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

standing by the contractual commitments to which they already agreed and are legally bound -- the defendant Banks have seized upon a false pretext -- a nonexistent unspecified "Event of Default" -- in a vain attempt to escape their obligations.

8.    The Revolver Banks' misconduct here was calculated, intentional and malicious.  Defendants abandoned their lending commitments solely to try to extricate themselves from a loan they no longer wish to make, notwithstanding that those commitments are clear, unequivocal, and binding, and that Plaintiff and thousands of employees and their families are relying on those commitments to be performed.

9.    Accordingly, Fontainebleau by this action seeks specific performance of the Revolver Banks' obligations, as well as declaratory relief establishing that the April 20 purported termination of their commitments was improper and that the Revolver Banks are obligated to meet their funding commitments.  In addition, although damages alone cannot compensate for the loss of irreplaceable financing for its unique resort, Fontainebleau seeks recovery from the Revolver Banks of all damages resulting from the Banks' bad faith breach of their obligations, including consequential damages arising from the Revolver Banks' bad faith and wrongful conduct, totaling in the billions of dollars.

10.    Fontainebleau also asserts two additional claims against defendant Deutsche Bank Trust Company Americas ("Deutsche Bank").  Deutsche Bank is a subsidiary of Deutsche Bank, A.G., which shortly over one year ago became the owner and developer, through an affiliate, of another resort-casino under development on the Las Vegas Strip -- the Cosmopolitan Resort and Casino (the "Cosmopolitan") -- that will face stiff competition from the Fontainebleau Las Vegas once it commences operations.

11.    Deutsche Bank was originally the Cosmpolitan's lender, and acquired the project in mid-2008 in a foreclosure, following the borrower's default, for

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

approximately one billion dollars. To further its own interests as the Cosmopolitan's owner and developer, Deutsche Bank is now seeking to destroy the Fontainebleau in order to minimize competition with the Cosmopolitan project. To that end, Deutsche Bank has sought to persuade other Revolver Banks to breach their commitments and has worked aggressively to discourage other Revolver Banks from working out their differences with Fontainebleau. In so doing, Deutsche Bank has breached the covenant of good faith and fair dealing that is implied by law in every contract that, like the loan agreement here, is governed by New York law.

12.    Deutsche Bank's misconduct is more than just a breach of its contractual obligations. To serve its own conflicting interest in ensuring the success of Cosmopolitan, Deutsche Bank has induced other Revolver Banks to breach their own commitments -- which, under the loan agreement, are separate and independent obligations. Accordingly, Deutsche Bank is liable for tortious interference with the other Revolver Banks' contractual obligations.

## PARTIES

13.    Fontainebleau is a Nevada limited liability company, with its principal place of business at 2827 Paradise Road, Las Vegas, Nevada 89109. Plaintiff is also the successor by merger to Fontainebleau Las Vegas II, LLC, a Florida limited liability company. This action is not removable because there is no complete diversity of citizenship between Fontainebleau and the Defendants. For diversity purposes, Fontainebleau is a citizen of New York, Delaware, North Carolina, Illinois, and numerous other jurisdictions.

14.    Defendant Bank of America, N.A. ("Bank of America"), is a nationally chartered bank with its main office in Charlotte, North Carolina. Bank of America is committed to fund $100 million under the Revolving Loan.

15.    Defendant Merrill Lynch Capital Corporation is a Delaware corporation with a principal place of business in New York. Merrill Lynch Capital

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Corporation, which is now indirectly owned by Bank of America, is committed to fund $100 million under the Revolving Loan.

16.    Defendant JPMorgan Chase Bank, N.A. is a nationally chartered bank with its headquarters in New York, New York.  JPMorgan Chase Bank, N.A is committed to fund $90 million under the Revolving Loan.

17.    Defendant Barclays Bank PLC is a public limited company in the United Kingdom with its principal place of business in London, England. Barclays Bank PLC is committed to fund $100 million under the Revolving Loan.

18.    Defendant Deutsche Bank is a New York State-chartered bank with its principal office in New York, New York.  Deutsche Bank is committed to fund $80 million under the Revolving Loan.

19.    Defendant The Royal Bank of Scotland PLC is a banking association organized under the laws of the United Kingdom with a branch in New York, New York.  The Royal Bank of Scotland PLC is committed to fund $90 million under the Revolving Loan.

20.    Defendant Sumitomo Mitsui Banking Corporation New York is a Japanese corporation with offices in New York, New York.  Sumitomo Mitsui Banking Corporation New York is committed to fund $90 million under the Revolving Loan.

21.    Defendant Bank of Scotland is chartered under the laws of Scotland, with its principal place of business in Edinburgh, Scotland.  Bank of Scotland is committed to fund $72.5 million under the Revolving Loan.

22.    Defendant HSH Nordbank AG, New York Branch is a German banking corporation with a branch in New York, New York.  HSH Nordbank AG, New York Branch is committed to fund $40 million under the Revolving Loan.

23.    Defendant MB Financial Bank, N.A. is a nationally chartered bank with its main office in Chicago, Illinois.  MB Financial Bank, N.A. is committed to fund $7.5 million under the Revolving Loan.

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
30 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

**THE FACTS**

A.     <u>The Fontainebleau Las Vegas Project</u>

24.     The "Fontainebleau" brand is one of the most high-profile names in the lodging industry today, known for combining striking design, contemporary art, music, fashion and technology into a vibrant and unique guest experience. The Project seeks to leverage the name recognition and brand value associated with the Fontainebleau Miami Beach hotel, an iconic property that recently reopened, after a one billion dollar investment, to enormous publicity, rave reviews and receipt of the 2008 Americas Lodging Investment Summit (ALIS) award for Development of the Year. Even under the present economic environment, Fontainebleau Miami Beach is performing at the top of its competitive set.

25.     The Project is designed to be a destination casino-resort on the north end of the Las Vegas Strip, situated on approximately 24.4 acres. The Project consists of a 63-story glass skyscraper featuring over 3,800 guest rooms, suites and condominium units; a 100-foot high three-level podium complex housing casino/gaming areas, restaurants and bars, a spa and salon, a live entertainment theater and a rooftop pool; and a 353,000 square-foot convention center.

26.     The Project will also feature high-end retail space (the "Retail Space") of approximately 286,500 square-feet including retail shops, restaurants, and a nightclub. The Retail Space is being developed by indirect subsidiaries of Fontainebleau's parent company ("Fontainebleau Retail"), funded by separate loans (the "Retail Financing").

27.     Plaintiff broke ground on the Project in January 2007, and today the Project is approximately 70% complete.

B.     <u>The Lenders And The Loan Agreements</u>

28.     On June 6, 2007, Plaintiff entered into a credit agreement (the "Credit Agreement") with a syndicate of lenders, including Bank of America as

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

administrative agent (the "Administrative Agent") and disbursement agent (the "Disbursement Agent"), whereby the Banks and other lenders agreed to loan $1.85 billion under three senior secured credit facilities (collectively, the "Credit Facilities"). The first was a $700 million dollar term loan facility with a seven-year maturity (the "Initial Term Loan"). The second was a $350 million dollar delay draw term loan facility with a seven-year maturity (the "Delay Draw Term Loan"). The third, intended to enable Plaintiff to complete construction and open the Project, was the $800 million Revolving Loan with a six-year maturity. (Two revolver lenders, with total commitments of $30 million --- one of which is in FDIC receivership --- are not parties to the present action.) Plaintiff also issued $675 million in second-mortgage notes with an eight-year maturity (the "Notes"). As is customary in such financings, and as the Revolver Banks understood, Fontainebleau entered into these loan agreements with the expectation that the revenue generated by the completed Project would permit it to satisfy its repayment obligations.

29.     Also on June 6, 2007, Fontainebleau, certain of its affiliates, and the Project's lenders, including the Revolver Banks, entered into the disbursement agreement (the "Disbursement Agreement"). The Disbursement Agreement sets forth the order of funding under the Credit Facilities, the Notes, and the Retail Financing, and the related conditions to providing Fontainebleau with advances under the various facilities.

30.     The $700 million Initial Term Loan was funded in full upon execution of the Credit Agreement. To date, $336.7 million of the $350 million Delay Draw Term Loan has been funded.

31.     The credit facilities provide two related mechanisms for funding the Project. First, the submission of a notice of borrowing ("Notice of Borrowing") obligates the Banks to transfer the requested funds into an account (the "Bank Proceeds Account") that is subject to the Disbursement Agreement. Second,

MORRIS PETERSON
ATTORNEYS AT LAW
10 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
.AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Fontainebleau must submit an advance request ("Advance Request"), typically monthly, to secure disbursements from the Bank Proceeds Account that it can then use to pay the costs of the Project.

32.     As consideration for their promise to provide Fontainebleau with financing when called upon to do so, the Revolver Banks were paid tens of million of dollars in fees at the June 2007 closing.  In particular, defendants Bank of America, Merrill Lynch, Deutsche Bank, and Barclays PLC served as co-lead arrangers and joint underwriters with respect to the Credit Facilities, and were compensated accordingly.

33.     In addition to these fees, several of the Revolver Banks have also been the beneficiaries of billions of dollars in federal TARP funds that are intended, as then-Treasury Secretary Paulson has explained, to induce banks to "deploy, not hoard, their capital.  And we expect them to do so ....".  For example, defendant Bank of America has received $52.5 billion dollars in government assistance to date, JPMorgan Chase $25 billion, and MB Financial Bank N.A. $196 million.  But instead of deploying their capital, the Revolver Banks have reneged on their existing commitments to Fontainebleau.

1.     **The Credit Agreement**

34.     Under the Credit Agreement, the Revolver Banks are obligated to disburse loan proceeds into the Bank Proceeds Account upon receiving from Fontainebleau a Notice of Borrowing specifying the amount of the Revolving Loan requested.

35.     The Credit Agreement also sets forth the only conditions to the Revolver Banks' funding obligation in response to a Notice of Borrowing.  Section 2.1(c) of the Credit Agreement provides that "[t]he making of Revolving Loans which are Disbursement Agreement Loans to the Bank Proceeds Account shall be subject **only** to the fulfillment of the applicable conditions set forth in Section 5.2 ...." (Emphasis in original.)

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
30 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

36.    Under Section 5.2 of the Credit Agreement, the only pertinent conditions to the Revolver Banks' obligations to fund the Revolving Loans are:

(a) Notice of Borrowing.  Borrowers shall have submitted a Notice of Borrowing specifying the amount and Type of the Loans requested, and the making thereof shall be in compliance with the applicable provisions of Section 2 of this Agreement.

. . .

(c) Drawdown Frequency.  Except for Loans made pursuant to Section 3 with respect to Reimbursement Obligations, Loans made pursuant to this Section shall be made no more frequently than once every calendar month unless the Administrative Agent otherwise consents in its sole discretion.

No representations, warranties, or certifications are required, and the lack of an Event of Default as defined in Section Eight of the Credit Agreement is not a condition precedent.  In any event, no such Event of Default has occurred here.

**2.    The Disbursement Agreement**

37.    The Disbursement Agreement sets forth Fontainebleau's material obligations to develop, construct and complete the Project, and Fontainebleau Retail's obligation to develop, construct and complete the Project's retail component.  The Disbursement Agreement also establishes the conditions to, and the relative sequencing of, disbursements from the proceeds of, among other things, the Revolving Loan, the Retail Financing and the Notes.  The Disbursement Agreement also establishes the obligations of the various agents to make disbursements to Fontainebleau of loan proceeds from the Bank Proceeds Account.

**C.    Defendants' Breaches Under the Loan Agreements**

38.    The Revolver Banks have repeatedly breached their obligations under the Credit Agreement.

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1.   **Refusal To Honor The March 2009 Notice of Borrowing**

39.    On March 2, 2009, Fontainebleau submitted a Notice of Borrowing for all of the funds remaining in the senior credit facilities, comprising $350 million under the Delay Draw Term Loan and $670 million under the Revolving Loan (the "March 2 Notice").  Under the Credit Agreement, funding under the March 2 Notice was required by the next day, March 3, 2009.

40.    Instead, the next day, Bank of America, as Administrative Agent, notified Fontainebleau by letter (the "March 2 Bank Letter") that it would not process the March 2 Notice, purportedly because it did not comply with Section 2.1(c) (iii) of the Credit Agreement, which provides that "unless the Total Delay Draw Commitments have been fully drawn, the aggregate outstanding principal amount of all Revolving Loans and Swing Line Loans shall not exceed $150,000,000."

41.    That same day, Fontainebleau advised Bank of America by letter that the March 2 Bank Letter was in error and urged Bank of America to reconsider (the "March 3 Letter").  Plaintiff also submitted an amended Notice of Borrowing to correct a scrivener's error, clarifying that the amount sought under the Revolving Loan was actually $656.52 million (the "March 3 Notice").  As the March 3 Letter correctly explained, the Credit Agreement only limits the amount of the Revolving Loan that can be outstanding unless the Term Loan has been fully drawn; it does not prohibit a Notice of Borrowing that -- like the March 2 Notice -- in fact does fully draw down the Term Loan such that the Notice can also draw upon more than $150,000,000 under the Revolving Commitments.  By fully drawing the Term Loan, the Notice of Borrowing itself removed the limitation on the amount of the Revolving Loan that may be drawn.

42.    On March 4, 2009, Bank of America again wrote to Fontainebleau stating that it had formed an ad hoc steering committee (the "Steering Committee") with other lenders (purportedly constituting a majority in interest of

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

the lenders under the Credit Agreement) and that this unspecified self-selected group of lenders "unanimously" concurred that the March 2 Notice did not conform to the Credit Agreement requirements.

43. Fontainebleau responded in a March 6, 2009 letter (the "March 6 Letter"), again pointing out that the interpretation of the Credit Agreement advanced by Bank of America was incorrect. Certain other lenders under the Credit Agreement advised Fontainebleau that they also disagreed with the Steering Committee's interpretation.

44. In light of the ongoing need to pay for the costs of the Project, Fontainebleau submitted an amended Notice of Borrowing on March 9, 2009 (the "March 9 Notice"), drawing only the $350 million remaining under the Term Loan. Fontainebleau specifically reserved its right to contest the Administrative Agent's decision to deny, and the Revolver Banks' refusal to provide, funding under the Revolving Loan.

45. Section 1.1 of the Credit Agreement defines a "Lender Default" as "the failure or refusal (which has not been retracted in writing) of a Lender to make available (i) its portion of any Loan required to be made by such Lender hereunder…"

46. The Revolver Banks' failure and refusal to fund the Revolving Loan in response to the March 2 Notice and March 3 Notice is a Lender Default under the express terms of the Credit Agreement.

2. **Improper "Termination" Of The Revolving Loan Commitments**

47. At or about the time that Bank of America informed Fontainebleau that various lenders had formed the Steering Committee, certain of the Revolver Banks determined that they would not honor their commitments to Fontainebleau, and began to seek a pretext on which to renege. On March 6, 2009, Bank of America sent Fontainebleau, on behalf of the Steering Committee, a letter purporting to raise certain questions and seek information about the Project, and

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
0 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 12 of 28

proposing a meeting and tour of the Project. In response, on March 16, 2009, Fontainebleau advised Bank of America that it would host such a meeting, but that neither holding such a meeting nor providing such information was a condition precedent to the Banks' compliance with the Notice of Borrowing, and that accordingly the Revolver Banks were still in default with respect to the March 2 and March 3 Notices.

48.    A meeting was held at the Project site on March 20, 2009, attended by certain Revolver Banks and other lenders. At the meeting, Fontainebleau provided the lenders with a presentation about the Project, additional information, and a site tour.

49.    On March 25, 2009, Fontainebleau finalized the documentation in support of its March Advance Request. Bank of America, as Disbursement Agent, authorized the release of $138 million from the Bank Proceeds Account.

50.    Shortly thereafter, in early April, Fontainebleau began gathering the relevant data to be submitted in connection with its April Advance Request. As part of this process, Fontainebleau determined that, under the definitions and criteria in the Credit Agreement and Disbursement Agreement, the remaining costs to complete the Project (the "Remaining Costs") appeared to exceed the available loan funds ("Available Funds"), and as a result the Project at that time likely could not satisfy the test that remaining costs and available funds be in balance (the "In Balance Test"), as required under the Disbursement Agreement.

51.    On April 13, 2009, Fontainebleau provided its lenders with notice, pursuant to the Disbursement Agreement and other loan documents (the "April 13 Notice") that as of that date, it did not believe that the Project satisfied the In Balance Test. The April 13 Notice made no reference whatsoever to the March Advance Request. Under the Disbursement Agreement, failure to satisfy the In Balance Test is <u>not</u> an Event of Default, and does not preclude the submission and funding of a Notice of Borrowing; at most, it only delays the ability to draw funds

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

from the Bank Proceeds Account, pursuant to an Advance Request, to pay the costs of the Project.

52.     Following the April 13 Notice, Fontainebleau and its lenders (including the Revolver Banks) held a meeting on Friday, April 17, in New York, to discuss the status of the Project and plans for its completion.  On Monday, April 20, as a follow-up to that meeting, the Steering Committee's counsel sent a letter on behalf of "a number of Steering Committee institutions," including certain Revolver Banks, to Fontainebleau's counsel (the "April 20 Letter").  The April 20 Letter requested additional information based on the April 17 meeting, including "[a]n assessment of the March In Balance Test" -- an implicit concession that these lenders did not believe they had sufficient information to determine whether the In Balance Test had been satisfied as of March.

53.     Only hours later, and before any response by Fontainebleau, the Revolver Banks sent Fontainebleau a letter (the "Termination Letter") asserting that "one or more Events of Default have occurred" under the Credit Agreement, but utterly failing to identify any particular Event of Default.  The Termination Letter also contended that the Total Revolving Commitments -- i.e., the $800 million Revolving Loan commitments (less the $10 million that is the subject of an FDIC receivership, and which is not at issue here) -- were "terminated effective immediately."

54.     The next day, April 21, 2009, Fontainebleau's counsel advised the Revolver Banks' counsel by letter that there had been no Event of Default under the Credit Agreement, that the Termination Letter was ineffective and a nullity, and that unless the Revolver Banks withdrew the Termination Letter immediately, Fontainebleau would pursue all available remedies.

3.     **Refusal To Honor The April 21, 2009 Notice of Borrowing**

55.     Also on April 21, 2009, Fontainebleau provided Bank of America, as Administrative Agent, with a Notice of Borrowing (the "April 21 Notice") that

Page 14 of 28

MORRIS PETERSON
ATTORNEYS AT LAW
6 BANK OF AMERICA PLAZA
30 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

complied with all applicable conditions under the Credit Agreement, seeking $710 million in Revolving Loans. The amount of the Notice of Borrowing -- $710 million -- reflects certain adjustments to the full $790 million in Revolver Loan commitments (net of the $10 million commitment in FDIC receivership) that do not alter or diminish Fontainebleau's right to those total commitments. Under the Credit Agreement, the April 21 Notice was required to be funded by 12:00 noon on April 23, 2009.

56.    The Revolver Banks have once again breached their obligations under the Credit Agreement by failing to honor the April 21 Notice.

**D.    The Revolver Banks' Breaches Will Cause Irreparable Harm
To Plaintiff And The Las Vegas Economy.**

57.    The Revolver Banks' breach of their obligations will cause extensive and irreparable harm to Plaintiff.

58.    The Project is roughly 70% complete, and significant work remains to be performed. The Project has now been deprived of access to at least $710 million in financing that is crucial to completion. Without these funds -- which cannot be replaced in today's economic environment -- the Project cannot be finished and will never open. Construction will cease, contractor liens will accrue, and revenues from the Project will never be realized.

59.    A collapse of the Project -- caused by the Revolver Banks' failure to fund -- would trigger similar consequences with respect to the Fontainebleau Retail development.

60.    Furthermore, the goal of the development of the Project was to build a unique destination casino-resort which would translate the successful Fontainebleau image, brand and reputation earned in Miami to the Las Vegas Strip. The Project thus was intended to expand further the Fontainebleau brand and generate new business opportunities. The Revolver Banks' breach of their

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
30 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

commitments and resulting failure of the Project will substantially tarnish Fontainebleau's business, brand image, and reputation.

61.     The Revolver Banks' breach of their obligations will also cause extensive and irreparable harm to Clark County and the Las Vegas economy. Currently, southern Nevada faces one of the most significant economic challenges in its modern history.  Unemployment has spiked to more than 10 percent and the annual job loss rate is 4.8 percent and climbing.  Southern Nevada's hotels and casino-hotels directly employed an average of 176,100 workers in 2008 but as of January 2009 this number fell to 164,700 -- a loss of 11,400 jobs.  It is undeniable that the interest of the public is best served by the completion of the Project.  If the Revolver Banks' breach forces the Project to shut down, there would be a profound impact on the community and the already reeling Las Vegas economy.

62.     At the upcoming peak of its construction cycle, the Project is expected to employ more than 5,000 workers and generate nearly $41 million dollars per month in wages and benefits to southern Nevada households.  Under the current plans, the finished Project will employ over 6,000 people directly and an additional 2,000 indirect regional jobs.  Moreover, the Project would result in substantial public revenues, including property tax payments of $1.1 million per acre per year and $73 million dollars in tax and fee payments annually.

63.     The failure of the Revolver Banks to honor their financial commitments to the Project places the completion of this hotel and casino in serious jeopardy.  Should the Project fail, the aforementioned benefits would not be realized, thousands of jobs would be lost, millions of dollars in tax revenue would evaporate, and Clark County would likely sink further into economic recession.

E.     **Plaintiff Has No Adequate Remedy At Law**

64.     Specific performance of the Revolver Banks' obligations is required, and entirely appropriate, because Plaintiff lacks an adequate remedy at law.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

65.     Damages would not be an adequate remedy at law because alternative financing cannot be obtained.  The terms of the Revolving Loan negotiated in June 2007 cannot be replicated in today's financial markets, and $770 million in comparable revolver financing for a Las Vegas construction project cannot be obtained.

66.     Specific performance is also appropriate because the Project concerns real property.  No other parcel of land, and no other development, could possibly substitute for the Fontainebleau Las Vegas.  If the Revolver Banks' breaches cause Fontainebleau to lose the Project, that loss cannot adequately be remedied in damages.

67.     The harm to Fontainebleau is also irreparable because the Banks' wrongdoing threatens to damage Fontainebleau's reputation and brand image.  These highly valuable assets are being and will be harmed by the Revolver Banks' spurious claim that an Event of Default has occurred; that reputational and business harm cannot be undone.

## FIRST CAUSE OF ACTION

### (Breach of the Credit Agreement -- Against All Revolver Banks
### Failure to Fund the Revolving Loans in March 2009)

68.     Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 67 hereof.

69.     The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks agreed to fund $800 million in Revolving Loans.

70.     The March 2 Notice, as amended by the March 3 Notice (together, the "March Notice of Borrowing") submitted by Fontainebleau complied with all applicable conditions under the Credit Agreement.  At the time of the March Notice of Borrowing, Fontainebleau had performed all obligations required of it to be performed.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

71.     Pursuant to the terms of the Credit Agreement, the Revolver Banks were, and continue to be, obligated to honor the March Notice of Borrowing.

72.     The Revolver Banks' failure to honor the March Notice of Borrowing constitutes a material breach of their obligations under the Credit Agreement.

73.     By refusing to comply with their obligations under the Credit Agreement, the Revolver Banks have also breached the covenant of good faith and fair dealing implied in every contract that, like this one, is governed by New York law.

74.     There is a real and substantial controversy between Fontainebleau, on the one hand, and the Revolver Banks, on the other hand.  Expeditious resolution of this controversy is both necessary and appropriate.

75.     Fontainebleau has no adequate remedy at law for the Revolver Banks' breaches, and will be irreparably harmed thereby.

76.     Accordingly, Fontainebleau is entitled to a decree of specific performance compelling the Banks to provide the Revolving Loans in accordance with the March Notice of Borrowing.

77.     While damages would not adequately compensate Plaintiff for the harm caused by the Revolver Banks' breaches, Plaintiff also is entitled to damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**(Breach of the Credit Agreement -- Against All Revolver Banks
Improper Termination of Commitments)**

78.     Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 77 hereof.

79.     The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks and other revolver lenders agreed to fund $800 million in Revolving Loans.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
20 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 18 of 28

80. In the Termination Letter, the Revolver Banks have taken the position that as of April 20, 2009, one or more Events of Default have occurred. The Revolver Banks failed to identify any such Event of Default.

81. No Event of Default under the Credit Agreement has occurred, and the Termination Letter is ineffective and a nullity. By repudiating their obligations, the Revolver Banks have breached the Credit Agreement.

82. There is thus a real and substantial controversy between Fontainebleau, on the one hand, and the Revolver Banks, on the other hand, as to the validity of the Termination Letter. Expeditious resolution of this controversy is both necessary and appropriate.

83. Accordingly, Fontainebleau is entitled to a judgment declaring that as of April 21, 2009, (i) no Event of Default had occurred under the Credit Agreement; (ii) the Credit Agreement was in full force and effect, including with respect to the Revolver Banks, and (iii) the Termination Letter was ineffective and a nullity.

84. Fontainebleau has no adequate remedy at law for the Revolver Banks' breaches, and will be irreparably harmed thereby.

85. Accordingly, Fontainebleau is entitled to a decree of specific performance compelling the Banks to continue to comply with their obligations under the Credit Agreement.

86. While damages would not adequately compensate Fontainebleau for the harm caused by the Revolver Banks' breaches, Fontainebleau also is entitled to damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**(Breach of the Credit Agreement -- Against All Revolver Banks
Failure to Fund the Revolving Loans in April 2009)**

87. Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 86 hereof.

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
X0 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

88.    The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks and other revolver lenders agreed to fund $800 million in Revolving Loans.

89.    The April 21 Notice of Borrowing submitted by Fontainebleau complied with all applicable conditions under the Credit Agreement.  At the time of the April 21 Notice, Fontainebleau had performed all obligations required of it to be performed.

90.    Pursuant to the terms of the Credit Agreement, the Revolver Banks were, and continue to be, obligated to honor the April 21 Notice.

91.    The Revolver Banks' failure to honor the April 21 Notice constitutes a material breach of their obligations under the Credit Agreement.

92.    By refusing to comply with their obligations under the Credit Agreement, the Revolver Banks have also breached the covenant of good faith and fair dealing implied in every contract that, like this one, is governed by New York law.

93.    There is a real and substantial controversy between Fontainebleau, on the one hand, and the Revolver Banks, on the other hand.  Expeditious resolution of this controversy is both necessary and appropriate.

94.    Fontainebleau has no adequate remedy at law for the Revolver Banks' breaches, and will be irreparably harmed thereby.

95.    Accordingly, Fontainebleau is entitled to a decree of specific performance compelling the Banks to provide the Revolving Loans in accordance with the April 21 Notice.

96.    While damages would not adequately compensate Fontainebleau for the harm caused by the Revolver Banks' breaches, Fontainebleau also is entitled to damages in an amount to be proven at trial.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 20 of 28

## FOURTH CAUSE OF ACTION

### (Equitable Estoppel -- Against All Revolver Banks)

97.    Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 96 hereof.

98.    The Revolver Banks led Fontainebleau to believe that they would comply with their obligations to provide the Revolving Loans by, among other things, continuing to engage in dialogue as to the status of the project, requesting information from Fontainebleau, attending meetings with Fontainebleau, and otherwise acting as if they still intended to perform under the Credit Agreement. At no time prior to April 20, 2009 did the Revolver Banks state or give any indication that they believed an Event of Default had occurred.

99.    In this manner, the Revolver Banks confirmed to Fontainebleau that they would provide the Revolving Loans when presented with a compliant Notice of Borrowing, and concealed the material fact that they had already determined not to perform their obligations.  The Revolver Banks intended, or reasonably should have expected, that Fontainebleau would rely on their representations and omissions. In relying on the legitimate expectation of ongoing funding, Plaintiff continued to incur substantial construction-related expenses and make ongoing commitments to vendors and other tradespeople and its employees.

100.    Fontainebleau thus relied on the Revolver Banks' representations to its detriment, by incurring millions of dollars of costs and committed spending based on the expectation that the Revolver Banks would honor their commitments and fund those expenditures.  Fontainebleau did not know, and had no way of knowing, that the Revolver Banks were planning to breach the Credit Agreement.

101.    As a direct and proximate cause of the Revolver Banks' failure to honor their own representations regarding the Revolving Loans, Fontainebleau has been injured.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
20 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

102.    Accordingly, although monetary damages would be inadequate to compensate Fontainebleau for its injury, Fontainebleau is entitled to damages, including consequential damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing Under the Credit Agreement -- Against Deutsche Bank)

103.    Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 102 hereof.

104.    The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks and other revolving lenders agreed to fund $800 million in Revolving Loans.

105.    New York law, which governs the Credit Agreement, implies in all contracts a covenant of good faith and fair dealing in the course of performance. The purpose of this covenant is to ensure that parties to a contract will not destroy or injure the right of another party to enjoy the fruits of the contract.

106.    Pursuant to that implied covenant, Deutsche Bank, as a party to the Credit Agreement, owed and owes Fontainebleau a duty of good faith and fair dealing.

107.    Deutsche Bank has encouraged other Revolver Lenders to breach their obligations under the Credit Agreement. Deutsche Bank has also sought to undermine other Revolver Lenders' attempts to resolve the pending dispute between the Fontainebleau and the Revolver Lenders. In so doing, Deutsche Bank has breached the covenant of good faith and fair dealing that is implied by law in the Credit Agreement.

108.    Deutsche Bank's motive for taking these steps results from its conflicted position as an affiliate of the owner and developer of the Cosmopolitan Resort and Casino (the "Cosmopolitan"), another Las Vegas Strip resort-casino construction project. The Cosmopolitan is a resort casino and condo project

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
30 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 22 of 28

located on the Las Vegas strip that broke ground in the fall of 2005 and is currently scheduled to open in the second quarter of 2010. Like the Fontainebleau, the Cosmopolitan is expected to feature approximately 3,000 residential and hotel units, an 80,000 square foot casino; 265,000 square feet of retail and restaurant space; a 40,000 square foot spa and fitness facility; a theater; and 150,000 square feet of meeting/convention space.

109.    Deutsche Bank and its affiliates originally were involved in the Cosmopolitan project as a lender, starting in 2003 when Ian Bruce Eichner, the owner/developer, sought financing from Deutsche Bank or its affiliates to purchase the land on the Las Vegas Strip. As the Cosmopolitan project moved forward, this Deutsche Bank financing increased on more than one occasion. In January 2008, when Eichner was unable to raise additional equity, he defaulted on the $760 million dollar construction loan from Deutsche Bank.

110.    Deutsche Bank subsequently foreclosed on the Cosmopolitan and, in late summer/early fall of 2008, Nevada Property I, LLC, an affiliate of Deutsche Bank, purchased the Cosmopolitan --nominally a $3.9 billion dollar project -- for $1 billion dollars in a foreclosure sale. The property is now held by a subsidiary and is financed through a loan from Deutsche Bank AG.

111.    The Project, when completed, will be a strong competitor with Cosmopolitan. And Deutsche Bank's more than one billion dollar ownership stake in Cosmopolitan far exceeds its commitment to Fontainebleau, providing Deutsche Bank with a strong incentive to undermine Fontainebleau's development and future prospects.

112.    As a result of Deutsche Bank's interest in Cosmopolitan, Deutsche Bank is not only trying to circumvent its contractual obligations to Fontainebleau but has actively encouraged other Revolver Lenders, and continues to encourage them, to breach their commitments to the Project, all in violation of the implied covenant of good faith and fair dealing.

MORRIS PETERSON
ATTORNEYS AT LAW
3 BANK OF AMERICA PLAZA
10 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 23 of 28

113.    Fontainebleau has been, and continues to be, directly and proximately harmed as a result of Deutsche Bank's misconduct.

114.    Accordingly, Fontainebleau seeks an injunction restraining Deutsche Bank from continuing its violations of the duty of good faith and fair dealing as set forth above.  In addition, although monetary damages would be inadequate to compensate Fontainebleau for its injury, Fontainebleau is entitled to damages from Deutsche Bank in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations --
### Against Deutsche Bank)

115.    Fontainebleau realleges and incorporates each and every allegation contained in paragraphs 1 through 114 hereof.

116.    The Credit Agreement is a valid and binding contract, pursuant to which the Revolver Banks and other revolver lenders agreed to fund $800 million in Revolving Loans.

117.    Pursuant to the terms of the Credit Agreement, Fontainebleau has a contractual relationship with each Revolver Bank as a lender to the agreement.

118.    The Credit Agreement expressly states that the obligations of the various lenders thereunder, including each Revolver Bank, are several and not joint.  Thus, as the Credit Agreement makes clear, "[t]he failure of any Lender to make any Loan, to fund any such participation or make any payment ... shall not relieve any other Lender of its corresponding obligation ...."  Accordingly, each Revolver Bank has a separate and independent obligation to fund its own commitment under the Revolving Loan.

119.    As a result, a breach by one Revolver Bank does not eliminate the obligation of any other Revolver Bank to satisfy its commitments under the contract.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
.AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 24 of 28

120.    Deutsche Bank, as a Revolver Bank, is aware of the Credit Agreement, of the other Revolver Banks' commitments, and of the fact that these commitments are several and independent.

121.    Deutsche Bank has intentionally and without justification interfered in contractual relationships between Fontainebleau and the other Revolver Banks, and continues to do so, as alleged above, by encouraging them to breach their commitments and by interfering with attempts to resolve the dispute in recent and ongoing negotiations.

122.    These acts by Deutsche Bank were and are intended or designed to disrupt the contractual relationships between Fontainebleau and the other Revolver Lenders and cause the failure of the Project, all to the economic benefit of Deutsche Bank and its Cosmopolitan project.

123.    Deutsche Bank was motivated to destroy the Project, and injure Fontainebleau, to benefit the Cosmopolitan, the competing construction project in which Deutsche Bank has a vastly larger financial stake.

124.    As a direct and proximate cause of Deutsche Bank's interference in the contractual relationship between Fontainebleau and the other Revolver Lenders, the other Revolver Lenders have breached the agreement and terminated their commitments, and Fontainebleau has been injured.

125.    Accordingly, Fontainebleau seeks an injunction restraining Deutsche Bank from continued interference with Fontainebleau's contractual relations, as set forth above.  In addition, although monetary damages would be inadequate to compensate Fontainebleau for its injury, Fontainebleau is entitled to damages from Deutsche Bank in an amount to be determined at trial.

MORRIS PETERSON
ATTORNEYS AT LAW
0 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

WHEREFORE, Fontainebleau demands judgment against the Revolver Banks, and each of them,

(a)    On the First, Second, Third and Fourth Causes of Action, decreeing specific performance by the Revolver Banks of their obligations under the Credit Agreement and related documentation, including providing the Revolving Loans pursuant to the March 2 Notice of Borrowing and the April 21 Notice of Borrowing;

(b)    On the First, Second, Third, and Fourth Causes of Action, awarding Fontainebleau damages in an amount to be determined at trial, but in no event less than three billion dollars;

(c)    On the Second Cause of Action, declaring that as of April 21, 2009:  (i) no Event of Default had occurred under the Credit Agreement; (ii) the Credit Agreement was in full force and effect, including with respect to the Revolver Banks, and (iii) the Termination Letter was ineffective and a nullity;

(d)    On the Fifth Cause of Action, enjoining Deutsche Bank from further violations of the duty of good faith and fair dealing under the Credit Agreement;

(e)    On the Sixth Cause of Action, enjoining Deutsche Bank from further tortious interference in Fontainebleau's contractual relations;

(f)    On the Fifth and Sixth Causes of Action, awarding damages against Deutsche Bank in an amount to be determined at trial;

(g)    Awarding Fontainebleau the costs and disbursements of this action, including attorneys' fees; and

(h)    Awarding Fontainebleau such other and further relief as this Court may deem just and proper.

MORRIS PETERSON
ATTORNEYS AT LAW
6 BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

MORRIS PETERSON

By: _____
Steve Morris, Nev. Bar No. 1543
Jared M. Sechrist, Bar No. 10439
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

Marc E. Kasowitz
(*pro hac vice pending*)
David M. Friedman
(*pro hac vice pending*)
Jed I. Bergman
(*pro hac vice pending*)
Cara M. Ciuffani
(*pro hac vice pending*)
KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
1633 Broadway
New York, New York 10019

Attorneys for Plaintiff
FONTAINEBLEAU LAS VEGAS LLC

MORRIS PETERSON
ATTORNEYS AT LAW
9 BANK OF AMERICA PLAZA
30 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 27 of 28

# CERTIFICATE OF SERVICE

Pursuant to Nev. R. Civ. P. 5(b), I certify that I am an employee of MORRIS PETERSON; that I am familiar with the firm's practice of collection and processing documents for mailing; that, in accordance therewith, I caused the following document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first class postage prepaid, on the date and to the addressee(s) shown below: **AMENDED COMPLAINT**

TO:

Barclays Bank PLC
200 Park Avenue
New York, New York 10166

HSH Nordbank AG, New York Branch
230 Park Avenue, Suite 3200
New York, New York 10169

JP Morgan Chase Bank, N.A.
1111 Polaris Parkway
Columbus, OH 43240

MB Financial Bank, N.A.
6111 River Road
Rosemont, Illinois 60018

Attorneys for Bank of Scotland

Kenneth Noble
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022-2585
Facsimile: (212) 894-5653

Merrill Lynch Capital Corporation
Legal Department
222 Broadway, 17th Floor
New York, NY 10038-2510

Bank of America, N.A.
Legal Department
301 S. Kings Drive
Charlotte, NC 28204-3039

Bank of America
c/o CT Corp registered agent
150 Fayetteville, Box 1011
Raleigh, NC 27601

Deutsche Bank Trust Company Americas
The Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Sumitomo Mitsui Banking Corporation
277 Park Avenue
6th Floor
New York, NY 10019-6799

Royal Bank of Scotland PLC
101 Park Avenue, #12
New York, New York 10178

DATED this 13th day of May, 2009.

By _____

MORRIS PETERSON
ATTORNEYS AT LAW
D BANK OF AMERICA PLAZA
00 SOUTH FOURTH STREET
AS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 28 of 28

# EXHIBIT C

Dennis L. Kennedy, Nevada Bar No. 1462
Sarah E. Harmon, Nevada Bar No. 8106
Brandon P. Kemble, Nevada Bar No. 11175
BAILEY✣KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada  89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
dkennedy@baileykennedy.com
sharmon@baileykennedy.com
bkemble@baileykennedy.com

Thomas C. Rice (*pro hac vice pending*)
David Woll (*pro hac vice pending*)
Justin S. Stern (*pro hac vice pending*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
trice@stblaw.com
dwoll@stblaw.com
jstern@stblaw.com

Attorneys for Defendants
JPMORGAN CHASE BANK, N.A., BARCLAYS
BANK PLC, DEUTSCHE BANK TRUST
COMPANY AMERICAS, and THE ROYAL BANK
OF SCOTLAND PLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FONTAINEBLEAU LAS VEGAS LLC, individually and as successor by merger to FONTAINEBLEAU LAS VEGAS  II, LLC, <br> Plaintiff, <br> v. <br><br> BANK OF AMERICA, N.A.; MERRILL LYNCH CAPITAL CORPORATION; JPMORGAN CHASE BANK, N.A.; BARCLAYS BANK PLC; DEUTSCHE BANK TRUST COMPANY AMERICAS; THE ROYAL BANK OF SCOTLAND PLC; SUMITOMO MITSUI BANKING CORPORATION NEW YORK; BANK OF SCOTLAND; HSH NORDBANK AG, NEW YORK BRANCH; MB FINANCIAL BANK, N.A., <br> Defendants. | Case No. 2:09-CV-860 <br><br> **NOTICE OF REMOVAL OF ACTION UNDER 12 U.S.C. § 632 and 28 U.S.C. § 1441** |

1   TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2         PLEASE TAKE NOTICE that pursuant to 12 U.S.C. § 632 and 28 U.S.C. § 1441,

3   Defendants Bank of America, N.A., Merrill Lynch Capital Corporation, JPMorgan Chase Bank,

4   N.A., Barclays Bank PLC, Deutsche Bank Trust Company Americas, The Royal Bank of

5   Scotland plc, Sumitomo Mitsui Banking Corporation New York, Bank of Scotland and HSH

6   Nordbank AG, New York Branch by their respective attorneys and with a full reservation of any

7   and all rights, claims, and defenses of any nature whatsoever, including but not limited to

8   defenses related to service of process, jurisdiction, and venue, hereby remove to this Court the

9   state action described below.

10   **I. Timing and Procedural Background of Pending State Court Action**

11         1.    Plaintiff filed a Summons and Complaint in this action in the Eighth

12   Judicial District Court, Clark County, on April 23, 2009, entitled *Fontainebleau Las Vegas LLC*

13   *v. Bank of Am., N.A., et al.,* Case No. A588636. A copy of the Complaint is attached hereto as

14   Exhibit A. Plaintiff filed an Amended Complaint on May 12, 2009. A copy of the Amended

15   Complaint is attached hereto as Exhibit B.

16         2.    Defendants Bank of America, N.A., JPMorgan Chase Bank, N.A., and

17   Deutsche Bank Trust Company Americas were each served with a copy of the original

18   Complaint through their respective registered agents on April 27, 2009; Defendant Merrill

19   Lynch Capital Corporation was served through its New York office on April 27, 2009;

20   Defendant Bank of Scotland was served through its counsel on April 28, 2009; Defendant

21   Sumitomo Mitsui Banking Corporation New York was served on April 29, 2009; Defendant The

22   Royal Bank of Scotland plc was served through its registered agent on April 29, 2009;

23   Defendant HSH Nordbank AG, New York Branch was also served; Defendant Barclays Bank

24   PLC has not been served. Copies of the service of process are attached hereto as Exhibit C. The

25   Defendants have not received a service copy of the Amended Complaint.

1    3.    Defendants have not yet responded to the original Complaint or the

2    Amended Complaint. There has been no trial on the merits in the state court; therefore, this

3    notice of removal is timely filed in accordance with the provisions of 12 U.S.C. § 632.

4    4.    A copy of this notice will be served on counsel for Plaintiff and filed with

5    the Clerk of the Court for the Eighth Judicial District Court, Clark County.

6    **II.  Jurisdiction and Venue**

7    5.    This Court has jurisdiction over the civil action pursuant to 12 U.S.C. §

8    632 because defendants Bank of America, N.A., JPMorgan Chase Bank, N.A., and MB

9    Financial Bank, N.A. are national banking associations organized under the laws of the United

10    States and the action arises out of transactions involving international or foreign banking or

11    other international or foreign financial operations, within the meaning of 12 U.S.C. § 632.[1]

12    6.    Venue in the United States District Court for the District of Nevada is

13    proper pursuant to 28 U.S.C. § 1446(a), because this action is pending in the Eighth Judicial

14    District Court, Clark County.

15    **III.  Basis For Removal**

16    7.    This Court has original jurisdiction over this action pursuant to 12 U.S.C.

17    § 632 (hereinafter referred to as the "Edge Act").

18    8.    The Edge Act provides in relevant part:

19    Notwithstanding any other provision of law, all suits of a civil
nature . . . to which any corporation organized under the laws of
20    the United States shall be a party, arising out of transactions
involving international or foreign banking, . . . or out of other
21    international or foreign financial operations, either directly or
through the agency, ownership, or control of branches or local
22    institutions . . . shall be deemed to arise under the laws of the
United States, and the district courts of the United States shall
23    have original jurisdiction of all such suits; and any defendant in
any such suit may, at any time before the trial thereof, remove

24

25

---

[1]    Defendants have yet to take discovery regarding Plaintiff's citizenship, which may
establish an independent basis for federal diversity jurisdiction pursuant to 28 U.S.C. §
1332.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

such suits from a State court into the district court of the United States. . . .

12 U.S.C. § 632.

9.     The Edge Act provides for the removal of civil state court actions to federal district courts where (i) one or more parties to the suit is a corporation organized under the laws of the United States, and (ii) the suit arises out of a transaction involving international or foreign banking or other international or foreign financial operations. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996-97 (9th Cir. 2006) (noting removal of state court action for breach of contract and fraud by defendant U.S.-chartered banking corporation headquartered in New York pursuant to the Edge Act, 12 U.S.C. § 632, which "invests in the federal courts original jurisdiction over cases arising out of foreign banking transactions to which a U.S. corporation is a party"). Further, the Edge Act does not require the unanimous consent of all defendants to removal. *See City of Stockton v. Bank of Am.*, No. C-08-4060, 2008 WL 4911183, at *3 (N.D. Cal. Nov. 13, 2008) (finding the phrase "'any defendant' [in the Edge Act] is properly interpreted to mean that the removing defendant need not obtain consent from any other defendant").

10.    As federally chartered national banks, JPMorgan Chase Bank, N.A, Bank of America, N.A. and MB Financial Bank, N.A are each organized under the laws of the United States and therefore any one of them satisfy "the first requirement for this Court's exercise of subject matter jurisdiction under the Edge Act." *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 207 (S.D.N.Y. 2005). (Am. Compl. at ¶¶ 14, 16, 23.) Satisfaction of the first requirement by any one party to a multi-party action is sufficient under the Edge Act, even if one or more of the other parties are not United States corporations. *See Lemgruber*, 385 F. Supp. 2d at 213-14.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

11.     In addition, this lawsuit arises out of transactions involving international or foreign banking or other international or foreign financial operations and, as such, satisfies the second requirement for subject matter jurisdiction pursuant to the Edge Act.

12.     The second requirement of the Edge Act is satisfied when, "any part of [a suit] arises out of transactions involving international or foreign banking," *see In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996) (citing *Corp. Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786 (2d. Cir. 1980), *cert. denied*, 449 U.S. 1080), even if, "the international or foreign banking activity was not central to the case." *Id.* at 340 (citing *United Tech. v. Citibank, N.A.*, 469 F. Supp. 473 (S.D.N.Y. 1979).

13.     The term "banking" as used in the Edge Act has been interpreted to include traditional banking activities such as lending and financing. *See Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.*, No. 00 Civ. 1571, 2001 WL 327159, at *3 -*4 (S.D.N.Y. Apr. 4, 2001).

14.     In its Amended Complaint, Plaintiff alleges claims against Defendants, all of whom are banks, in connection with an alleged breach of a June 6, 2007 credit agreement (the "Credit Agreement") between Plaintiff and, *inter alia*, the Defendants whereby the Defendants agreed to loan funds to "finance the construction of [Plaintiff's] multi-billion casino-resort development project in Las Vegas." (Am Compl. at ¶ 1.)  Plaintiff alleges that under the Credit Agreement, the Defendants "are obligated to provide $770,000,000 in revolver financing (the "Revolving Loan") . . . [and] have unjustifiably failed and refused to do so." (*Id.* at ¶ 2.)

15.     The Amended Complaint alleges that Defendant Barclays Bank PLC is "a public limited company in the United Kingdom with its principal place of business in London, England." (*Id.* at ¶ 17.)

16.    The Amended Complaint alleges that Defendant The Royal Bank of Scotland plc is "a banking association organized under the laws of the United Kingdom with a branch in New York." (*Id.* at ¶ 19.)

17.    The Amended Complaint alleges that Defendant Sumitomo Mitsui Banking Corporation New York is "a Japanese corporation with offices in New York, New York." (*Id.* at ¶ 20.)

18.    The Amended Complaint alleges that Defendant Bank of Scotland is "chartered under the laws of Scotland, with its principal place of business in Edinburgh, Scotland." (*Id.* at ¶ 21.)

19.    Finally the Amended Complaint alleges that Defendant HSH Nordbank AG, New York Branch is "a German banking corporation with a branch in New York, New York." (*Id.* at ¶ 22.)

20.    The Amended Complaint alleges that these foreign Defendant banks committed, subject to the terms and conditions of the Credit Agreement, an aggregate $392.5 million in funds to the Revolving Loan; and alleges that these foreign Defendant banks ultimately refused to provide these funds. (*Id.* at ¶¶ 17, 19-22, 46, 56.)

21.    The participation in the Revolving Loan by these foreign Defendant banks clearly involves international or foreign banking or other international or foreign financial operations. *See Highland Crusader Offshore Partners, L.P. v. Lifecare Holdings, Inc.,* No. 3:08-CV-0102-B, 2008 WL 2066934, at *3-*4 (N.D. Tex. May 15, 2008) (removal under the Edge Act was proper and motion for remand denied in action arising from alleged breach of a credit facility agreement, finding that "[a]t least one of these lenders parties to the [credit] [a]greement is a foreign company.  Therefore, this action arises out of an international

1   transaction . . . ."). The court in *Highland* determined that Edge Act jurisdiction existed, despite

2   the fact that the credit agreement was for the benefit of a domestic hospital operator, the credit

3   agreement was executed in the U.S., governed by New York law, all communications regarding

4   the credit agreement were conducted in the U.S., and all funding decisions by the foreign lender

5   were made in Texas by its domestic investment advisor. *See also Corporation Venezolana de*

6   *Fomento v. Vintero Sales Corp.*, 629 F2d 786, 792 (2d Cir. 1980) (federal district court had

7

8   jurisdiction of a civil action under the Edge Act as "involving 'international or foreign banking'"

9   where the claims were based, in part, on allowance by defendant U.S. chartered bank of a

10   drawdown in New York by a New York corporation on a letter of credit on the account of a

11   foreign corporation).

12         22.     Further, Plaintiff's claim for breach of the Credit Agreement centers on

13   allegations that these foreign Defendant banks were party to a refusal to honor notices of

14   borrowing under the Revolving Loan and to terminate commitments to fund the Revolving

15

16   Loan. Accordingly, jurisdiction under the Edge Act is appropriate. *See City of Stockton v. Bank*

17   *of Am.*, No. C-08-4060, 2008 WL 4911183, at *5 (N.D. Cal. Nov. 13, 2008) (removal to federal

18   court under the Edge Act was proper, and original jurisdiction established, where plaintiff

19   California city alleged participation by defendant foreign banks in agreement to rig bidding on

20   domestic guaranteed investment contracts, holding that plaintiff's claim arises from an alleged

21   agreement "between foreign banks and others and, as a result, necessarily 'involves'

22   international or foreign banking."); *Pinto v. Bank One Corp.*, No. 02 Civ. 8477, 2003 WL

23   21297300 at *3 (S.D.N.Y. June 4, 2003) (putative New York class action alleging defendant

24

25   domestic banks improperly extended credit to domestic plaintiff was rightfully removed under

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  the Edge Act as one arising out of transactions involving foreign banking, where defendant

2  banks cleared several charges at issue through foreign banks before approving credit).

3       23.     WHEREFORE, Defendants Bank of America, N.A., Merrill Lynch

4  Capital Corporation, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust

5  Company Americas, The Royal Bank of Scotland plc, Sumitomo Mitsui Banking Corporation

6  New York, Bank of Scotland and HSH Nordbank AG, New York Branch respectfully notify this

7
8  Court that, pursuant to 12 U.S.C. § 632 and 28 U.S.C. § 1441, they have removed the above

9  action from the Eighth Judicial District Court, Clark County, to this Court.

10       DATED this 13th day of May, 2009.

11

12            BAILEY ❖ KENNEDY

13            By: _/s/ Sarah E. Harmon_____
               Dennis L. Kennedy, Nevada Bar No. 1462

14                 Sarah E. Harmon, Nevada Bar No. 8106
               Brandon P. Kemble, Nevada Bar No. 11175

15                 8984 Spanish Ridge Avenue
               Las Vegas, Nevada 89148-1302

16                 Telephone: (702) 562-8820
               Facsimile: (702) 562-8821

17                 dkennedy@baileykennedy.com
               sharmon@baileykennedy.com

18                 bkemble@baileykennedy.com

19                 -and-

20                 SIMPSON THACHER & BARTLETT LLP
               Thomas C. Rice (*pro hac vice pending*)

21                 David Woll (*pro hac vice pending*)
               Justin S. Stern (*pro hac vice pending*)

22                 425 Lexington Avenue
               New York, New York 10017

23                 Telephone: (212) 455-2000
               Facsimile: (212) 455-2502

24
25                 Attorneys for Defendants
               JPMORGAN CHASE BANK, N.A.,
               BARCLAYS BANK PLC, DEUTSCHE
               BANK TRUST COMPANY AMERICAS,
               and THE ROYAL BANK OF SCOTLAND
               PLC

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1   LIONEL SAWYER & COLLINS                KOLESAR & LEATHAM, CHTD.

2   By: ___/s/ Rodney M. Jean_____   By: ___/s/ Randolph L. Howard_____

3       Rodney M. Jean, Nev. Bar No. 1395      Randolph L. Howard, Nev. Bar No. 6688
        300 S. 4th St., Suite 1700             Peter D. Navarro, Nev. Bar No. 10168

4       Las Vegas, NV  89101                   3320 West Sahara Avenue, Suite 380
        Telephone: (702) 383-8888;             Las Vegas, New York  89102

5       Facsimile: (702) 383-8845              Telephone: (702) 362-7800
        rjean@lionelsawyer.com                 Facsimile: (702) 362-9472

6                                              RHoward@KLNevada.com
                                               PNavarro@KLNevada.com

7   -and-

8   O'MELVENY & MYERS LLP                   -and-
    Bradley J. Butwin (*pro hac vice pending*)

9   Jonathan Rosenberg (*pro hac vice         MAYER BROWN LLP
    pending*)                                 Jean-Marie L. Atamian (*pro hac vice pending*)

10  Daniel L. Cantor (*pro hac vice pending*) Jason I. Kirschner (*pro hac vice pending*)
    William J. Sushon (*pro hac vice pending*) 1675 Broadway

11  Times Square Tower                        New York, New York 10019-5820
                                              Telephone:  (212) 506-2500

12  Seven Times Square                        Facsimile: (212) 262-1910
    New York, New York 10036

13  Telephone:  (212) 326-2000
    Facsimile: (212) 326-2061                 ATTORNEYS FOR SUMITOMO MITSUI

14                                            BANKING CORPORATION NEW YORK

15  ATTORNEYS FOR BANK OF
    AMERICA, N.A. and MERRILL LYNCH

16  CAPITAL CORPORATION

17

18

19

20

21

22

23

24

25

1  BALLARD SPAHR ANDREWS &              FOX ROTHSCHILD LLP
   INGERSOLL, LLP
2
   By: __/s/ Stanley W. Parry_____     By:__/s/ Deanna L. Forbush_____
3     Stanley W. Parry, Nev. Bar No. 1417    Deanna L. Forbush, Nev. Bar No. 6646
      100 North City Parkway Suite 1750      John A. Hunt, Nev. Bar No. 1888
4     Las Vegas, NV 89106-4617               Bert Wuester Jr., Nev. Bar No. 5556
                                             3800 Howard Hughes Pkwy., Suite 500
5     Telephone: (702) 471-7000              Las Vegas, NV 89169
      Facsimile: (702) 471-7070              Telephone: (702) 262-6899
6     parrys@ballardspahr.com                Facsimile: (702) 597-5503
                                             dforbush@foxrothschild.com
7  -and-                                     jhunt@foxrothschild.com
                                             bwuester@foxrothschild.com
8  KATTEN MUCHIN ROSENMAN LLP
   Anthony L. Paccione (*pro hac vice*       -and-
9  *pending*)
   575 Madison Avenue                        KAYE SCHOLER LLP
10 New York, New York 10022                  Aaron Rubinstein (*pro hac vice pending*)
   Telephone: (212) 940-8800                 Phillip A. Geraci (*pro hac vice pending*)
11 Facsimile: (212)-940-8776                 425 Park Avenue
                                             New York, New York 10022
12                                           Telephone: (212) 836-8000
   ATTORNEYS FOR DEFENDANT                   Facsimile: (212) 836-8689
13 BANK OF SCOTLAND
                                             ATTORNEYS FOR DEFENDANT HSH
14                                           NORDBANK AG, NEW YORK BRANCH

15

16

17

18

19

20

21

22

23

24

25

BAILEY ✦ KENNEDY
8964 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 10 of 11

## CERTIFICATE OF SERVICE

In accordance with Fed. R. Civ. P. 5, I certify that I am an employee of Bailey❖Kennedy and that on the 13th day of May, 2009, a copy of the foregoing NOTICE OF REMOVAL was served on the parties by filing and serving the same using the ECF system or by United States mail postage prepaid as follows:

Steve Morris
Jared M. Sechrist
Morris Peterson
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV  89101
Telephone:  702-474-9400
Fax:  (702) 474-9422
sm@morrislawgroup.com
jms@morrislawgroup.com

Marc E. Kasowitz
David M. Friedman
Jed I. Bergman
Cara M. Ciuffani
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY  10019
Telephone:  212-506-1700
Fax:  212-500-3425

MB Financial Bank, N.A.
6111 River Road
Rosemont, IL  60018

/s/ Susan Russo
*Susan Russo*, an employee with
BAILEY❖KENNEDY

# EXHIBIT A

# EXHIBIT A

# Complaint previously included as Bergman Aff. Ex. A

# EXHIBIT B

# EXHIBIT B

Amended Complaint previously included as Bergman Aff. Ex. B

# EXHIBIT C

# EXHIBIT C

# EXHIBIT C

# EXHIBIT C

ORIGINAL

1  SUMM
   MORRIS PICKERING
2  Steve Morris, Nev. Bar No. 1543
   Email: sm@morrislawgroup.com
3  Jared M. Sechrist, Bar No. 10439
   Email: jms@morrislawgroup.com
4  900 Bank of America Plaza
   300 South Fourth Street
5  Las Vegas, NV 89101
   Telephone: (702) 474-9400
6  Facsimile: (702) 474-9422
7
8  Marc E. Kasowitz (pro hac vice pending)
   David M. Friedman (pro hac vice pending)
9  Jed I. Bergman (pro hac vice pending)
   Cara M. Ciuffani (pro hac vice pending)
10 KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
11 1633 Broadway
   New York, New York 10019
12 Telephone: (212) 506-1700
   Facsimile: (212) 500-3425
13
14 Attorneys for Plaintiff
   FONTAINEBLEAU LAS VEGAS LLC
15
16                    DISTRICT COURT
                  CLARK COUNTY, NEVADA
17                                          A 588 636
18 FONTAINEBLEAU LAS VEGAS LLC,      CASE NO.:
   individually and as successor by merger to
19 FONTAINEBLEAU LAS VEGAS II, LLC,  DEPT. NO:
20                        Plaintiff(s),
        -vs-                         Served:
21
   BANK OF AMERICA, N.A.; MERRILL    Bank of America Corporation
22 LYNCH CAPITAL CORPORATION;
   JPMORGAN CHASE BANK, N.A.;        4/27/09 @ 1245 pm
23 BARCLAYS BANK PLC; DEUTSCHE
   BANK TRUST COMPANY AMERICAS;
24 THE ROYAL BANK OF  SCOTLAND
   PLC; SUMITOMO MITSUI BANKING
25 CORPORATION NEW YORK; BANK OF
   SCOTLAND; HSH NORDBANK AG, NEW
26 YORK BRANCH; CAMULOS MASTER
   FUND LP; MB FINANCIAL BANK, N.A.,
27
28                     Defendant(s).

                                     SUMMONS BOA/4/23/2009

                SUMMONS - CIVIL

## SUMMONS - CIVIL

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT BANK OF AMERICA, N.A.:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.  If you intend to defend this lawsuit, within 20 days after this Summons is
    served on you, exclusive of the day of service, you must do the following:
    (a) File with the Clerk of this Court, whose address is shown below, a
        formal written response to the Complaint in accordance with the rules
        of the Court, with the appropriate filing fee.
    (b) Serve a copy of your response upon the attorney whose name and
        address is shown below.

2.  Unless you respond, your default will be entered upon application of the
    Plaintiff(s) and failure to so respond will result in a judgment of default
    against you for the relief demanded in the Complaint, which could result in
    the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do
    so promptly so that your response may be filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers,
    employees, board members, commission members and legislators each
    have 45 days after service of this Summons within which to file an Answer
    or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

By: _____ ALYSE HAMILTON _____
    Deputy Clerk                    Date
    Regional Justice Center
    200 Lewis Avenue
    Las Vegas, NV 89155

Submitted by:

_____
Steve Morris
Morris Peterson
300 S. 4th Street, #900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Attorneys for Plaintiff
**NOTE: When service is by publication, add a brief**          SUMMONS BOA.doc/4/23/2009
**statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

**AFFIDAVIT OF SERVICE**

STATE OF         )
                 )   ss:
COUNTY OF     )

_____, being duly sworn, says: That at all times herein affiant was and is over 18

years of age, not a party to nor interested in the proceeding in which this affidavit is

made. That affiant received _____ copy(ies) of the Summons and Complaint, _____ on

the _____ day of _____, 20_____ and served the same on the _____ day of _____,

20_____ by:

**(Affiant must complete the appropriate paragraph)**

1.    Delivering and leaving a copy with the Defendant _____ at (state address) _____

2.    Serving the Defendant _____ by personally delivering and leaving a copy with

      _____, a person of suitable age and discretion residing at the Defendant's usual

      place of abode located at (state address) _____

      **[Use paragraph 3 for service upon agent, completing (a) or (b)]**

3.    Serving the Defendant _____ by personally delivering and leaving a copy at

      (state address) _____

      (a)     With _____ as _____, an agent lawfully designated by statute to accept

             service of process;

      (b)     With _____, pursuant to NRS 14.020 as a person of suitable age and

             discretion at the above address, which address is the address of the

             resident agent as shown on the current certificate of designation filed with

             the Secretary of State.

4.    Personally depositing a copy in a mail box of the United States Post Office,

      enclosed in a sealed envelope, postage prepaid (Check appropriate method):

                     ☐ Ordinary mail
                     ☐ Certified mail, return receipt requested
                     ☐ Registered mail, return receipt requested

SUMMONS BOA.doc/4/23/2009

addressed to the Defendant _____ at Defendant's last known address which is

(state address) _____

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

EXECUTED this _____ day of _____, 20_____.

_____
Signature of person making service

SUMMONS BOA.doc/4/23/2009

ORIGINAL

OFFICE RECORD

DOCKET YES ____ NO ✓ CLOSED ____

RECEIVED
Office of the General Counsel
Columbus, OH

APR 27 2009

BY: USPC UPS Certified
Served Fax e-Mail
Interoffice: ____ Unknown

| 1 | SUMM |
| | MORRIS PICKERING |
| 2 | Steve Morris, Nev. Bar No. 1543 |
| 3 | Email: sm@morrislawgroup.com |
| | Jared M. Sechrist, Bar No. 10439 |
| 4 | Email: jms@morrislawgroup.com |
| | 900 Bank of America Plaza |
| 5 | 300 South Fourth Street |
| | Las Vegas, NV 89101 |
| 6 | Telephone: (702) 474-9400 |
| 7 | Facsimile: (702) 474-9422 |
| 8 | Marc E. Kasowitz (*pro hac vice pending*) |
| | David M. Friedman (*pro hac vice pending*) |
| 9 | Jed I. Bergman (*pro hac vice pending*) |
| | Cara M. Ciuffani (*pro hac vice pending*) |
| 10 | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP |
| 11 | 1633 Broadway |
| | New York, New York 10019 |
| 12 | Telephone: (212) 506-1700 |
| | Facsimile: (212) 500-3425 |
| 13 | |
| 14 | Attorneys for Plaintiff |
| | FONTAINEBLEAU LAS VEGAS LLC |
| 15 | |
| 16 | DISTRICT COURT |
| | CLARK COUNTY, NEVADA |
| 17 | |
| 18 | FONTAINEBLEAU LAS VEGAS LLC, |
| 19 | individually and as successor by merger to |
| | FONTAINEBLEAU LAS VEGAS II, LLC, |
| 20 | Plaintiff(s), |
| 21 | -vs- |
| 22 | BANK OF AMERICA, N.A.; MERRILL |
| | LYNCH CAPITAL CORPORATION; |
| 23 | JPMORGAN CHASE BANK, N.A.; |
| | BARCLAYS BANK PLC; DEUTSCHE |
| 24 | BANK TRUST COMPANY AMERICAS; |
| 25 | THE ROYAL BANK OF SCOTLAND |
| | PLC; SUMITOMO MITSUI BANKING |
| 26 | CORPORATION NEW YORK; BANK OF |
| | SCOTLAND; HSH NORDBANK AG, NEW |
| 27 | YORK BRANCH; CAMULOS MASTER |
| | FUND LP; MB FINANCIAL BANK, N.A., |
| 28 | Defendant(s). |

CASE NO.:  A 5 8 8 6 3 6

DEPT. NO:  XIII

SUMMONS JPMORGAN CHASE/4/23/2009

**SUMMONS - CIVIL**

**SUMMONS - CIVIL**

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT JPMORGAN CHASE BANK, N.A.:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.  If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

    (a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

    (b) Serve a copy of your response upon the attorney whose name and address is shown below.

2.  Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

Submitted by:

By: _____ ALYSE HAMILTON _____

Steve Morris
Morris Peterson
300 S. 4th Street, #900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Attorneys for Plaintiff

Deputy Clerk                    Date
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

**NOTE: When service is by publication, add a brief** SUMMONS JPMORGAN CHASE.doc/4/23/2009
**statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

**AFFIDAVIT OF SERVICE**

STATE OF ⎫
           ⎬ ss:
COUNTY OF ⎭

_____, being duly sworn, says: That at all times herein affiant was and is over 18

years of age, not a party to nor interested in the proceeding in which this affidavit is

made. That affiant received _____ copy(ies) of the Summons and Complaint, _____ on

the _____ day of _____, 20_____ and served the same on the _____ day of _____,

20_____ by:

**(Affiant must complete the appropriate paragraph)**

1.   Delivering and leaving a copy with the Defendant _____ at (state address) _____

2.   Serving the Defendant _____ by personally delivering and leaving a copy with

      _____, a person of suitable age and discretion residing at the Defendant's usual

      place of abode located at (state address) _____

      **[Use paragraph 3 for service upon agent, completing (a) or (b)]**

3.   Serving the Defendant _____ by personally delivering and leaving a copy at

      (state address) _____

      (a)    With _____ as _____, an agent lawfully designated by statute to accept

            service of process;

      (b)    With _____, pursuant to NRS 14.020 as a person of suitable age and

            discretion at the above address, which address is the address of the

            resident agent as shown on the current certificate of designation filed with

            the Secretary of State.

4.   Personally depositing a copy in a mail box of the United States Post Office,

      enclosed in a sealed envelope, postage prepaid (Check appropriate method):

            ☐ Ordinary mail
            ☐ Certified mail, return receipt requested
            ☐ Registered mail, return receipt requested

SUMMONS JPMORGAN CHASE.doc/4/23/2009

addressed to the Defendant _____ at Defendant's last known address which is

(state address) _____

I declare under penalty of perjury under the law of the State of Nevada that the

foregoing is true and correct.

EXECUTED this _____ day of _____, 20_____.

_____

Signature of person making service

SUMMONS JPMORGAN CHASE.doc/4/23/2009

# ORIGINAL

1  | SUMM
   | MORRIS PICKERING
2  | Steve Morris, Nev. Bar No. 1543
3  | Email:  sm@morrislawgroup.com
   | Jared M. Sechrist, Bar No. 10439
4  | Email:  jms@morrislawgroup.com
   | 900 Bank of America Plaza
5  | 300 South Fourth Street
   | Las Vegas, NV 89101
6  | Telephone: (702) 474-9400
7  | Facsimile: (702) 474-9422

8  | Marc E. Kasowitz (pro hac vice pending)
   | David M. Friedman (pro hac vice pending)
9  | Jed I. Bergman (pro hac vice pending)
   | Cara M. Ciuffani (pro hac vice pending)
10 | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
11 | 1633 Broadway
   | New York, New York 10019
12 | Telephone: (212) 506-1700
   | Facsimile: (212) 500-3425
13 |
14 | Attorneys for Plaintiff
   | FONTAINEBLEAU LAS VEGAS LLC

15 |
16 |                 DISTRICT COURT
   |              CLARK COUNTY, NEVADA
17 |
18 | FONTAINEBLEAU LAS VEGAS LLC,         CASE NO.: A 5 8 8 6 3 6
   | individually and as successor by merger to   DEPT. NO:   XIII
19 | FONTAINEBLEAU LAS VEGAS II, LLC,
20 |                        Plaintiff(s),
   |
21 |            -vs-
   |
22 | BANK OF AMERICA, N.A.; MERRILL
   | LYNCH CAPITAL CORPORATION;
23 | JPMORGAN CHASE BANK, N.A.;
   | BARCLAYS BANK PLC; DEUTSCHE
24 | BANK TRUST COMPANY AMERICAS;
   | THE ROYAL BANK OF  SCOTLAND
25 | PLC; SUMITOMO MITSUI BANKING
   | CORPORATION NEW YORK; BANK OF
26 | SCOTLAND; HSH NORDBANK AG, NEW
   | YORK BRANCH; CAMULOS MASTER
27 | FUND LP; MB FINANCIAL BANK, N.A.,
28 |
   |                        Defendant(s).

SUMMONS - CIVIL

### SUMMONS - CIVIL

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT DEUTSCHE BANK TRUST CO. AMERICAS:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.  *If you intend to defend this lawsuit, within 20 days after this Summons is* served on you, exclusive of the day of service, you must do the following:

    (a) File with the Clerk of this Court, whose address is shown below, a

    formal written response to the Complaint in accordance with the rules

    of the Court, with the appropriate filing fee.

    (b) Serve a copy of your response upon the attorney whose name and

    address is shown below.

2.  Unless you respond, your default will be entered upon application of the

    Plaintiff(s) and failure to so respond will result in a judgment of default

    against you for the relief demanded in the Complaint, which could result in

    the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do

    so promptly so that your response may be filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers,

    employees, board members, commission members and legislators each

    have 45 days after service of this Summons within which to file an Answer

    or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

Submitted by

_____

Steve Morris
Morris Peterson
300 S. 4th Street, #900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Attorneys for Plaintiff

By: _____
    ALYSE HAMILTON
    Deputy Clerk                    Date
    Regional Justice Center
    200 Lewis Avenue
    Las Vegas, NV 89155

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

**AFFIDAVIT OF SERVICE**

STATE OF                    )
                           )  ss:
COUNTY OF                   )

    \_\_\_\_\_, being duly sworn, says: That at all times herein affiant was and is over 18 years of age, not a party to nor interested in the proceeding in which this affidavit is made.  That affiant received \_\_\_\_\_ copy(ies) of the Summons and Complaint, \_\_\_\_\_ on the \_\_\_\_\_ day of \_\_\_\_\_, 20\_\_\_\_\_ and served the same on the \_\_\_\_\_ day of \_\_\_\_\_, 20\_\_\_\_\_ by:

           **(Affiant must complete the appropriate paragraph)**

1.    Delivering and leaving a copy with the Defendant \_\_\_\_\_ at (state address) \_\_\_\_\_

2.    Serving the Defendant \_\_\_\_\_ by personally delivering and leaving a copy with \_\_\_\_\_, a person of suitable age and discretion residing at the Defendant's usual place of abode located at (state address) \_\_\_\_\_

        **[Use paragraph 3 for service upon agent, completing (a) or (b)]**

3.    Serving the Defendant \_\_\_\_\_ by personally delivering and leaving a copy at (state address) \_\_\_\_\_

    (a)    With \_\_\_\_\_ as \_\_\_\_\_, an agent lawfully designated by statute to accept service of process;

    (b)    With \_\_\_\_\_, pursuant to NRS 14.020 as a person of suitable age and discretion at the above address, which address is the address of the resident agent as shown on the current certificate of designation filed with the Secretary of State.

4.    Personally depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope, postage prepaid (Check appropriate method):

        ☐ Ordinary mail
        ☐ Certified mail, return receipt requested
        ☐ Registered mail, return receipt requested

1  addressed to the Defendant _____ at Defendant's last known address which is

2  (state address) _____

3

4  I declare under penalty of perjury under the law of the State of Nevada that the

5  foregoing is true and correct,

6      EXECUTED this _____ day of _____, 20_____.

7

8      _____

9                          Signature of person making service

10

*UPS*
*Express*
*5/11/09*
*mc*

# ORIGINAL

1  **SUMM**
   MORRIS PICKERING
2  Steve Morris, Nev. Bar No. 1543
   Email: sm@morrislawgroup.com
3  Jared M. Sechrist, Bar No. 10439
   Email: jms@morrislawgroup.com
4  900 Bank of America Plaza
   300 South Fourth Street
5  Las Vegas, NV 89101
   Telephone: (702) 474-9400
6  Facsimile: (702) 474-9422
7
8  Marc E. Kasowitz (*pro hac vice pending*)
   David M. Friedman (*pro hac vice pending*)
9  Jed I. Bergman (*pro hac vice pending*)
   Cara M. Ciuffani (*pro hac vice pending*)
10 KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
11 1633 Broadway
   New York, New York 10019
12 Telephone: (212) 506-1700
   Facsimile: (212) 500-3425
13
14 Attorneys for Plaintiff
   FONTAINEBLEAU LAS VEGAS LLC
15
16             DISTRICT COURT
            CLARK COUNTY, NEVADA
17
18 FONTAINEBLEAU LAS VEGAS LLC,          CASE NO.: A 5 8 8 6 3 6
   individually and as successor by merger to
19 FONTAINEBLEAU LAS VEGAS II, LLC,      DEPT. NO:      XIII
                      Plaintiff(s),
20
                      -vs-
21
22 BANK OF AMERICA, N.A.; MERRILL
   LYNCH CAPITAL CORPORATION;
23 JPMORGAN CHASE BANK, N.A.;
   BARCLAYS BANK PLC; DEUTSCHE
24 BANK TRUST COMPANY AMERICAS;
   THE ROYAL BANK OF SCOTLAND
25 PLC; SUMITOMO MITSUI BANKING
   CORPORATION NEW YORK; BANK OF
26 SCOTLAND; HSH NORDBANK AG, NEW
   YORK BRANCH; CAMULOS MASTER
27 FUND LP; MB FINANCIAL BANK, N.A.,
28
                      Defendant(s).

                                        SUMMONS MERRILL LYNCH/4/23/2009

                    **SUMMONS - CIVIL**

**SUMMONS - CIVIL**

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT MERRILL LYNCH CAPITAL CORPORATION:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.  If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

    (a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

    (b) Serve a copy of your response upon the attorney whose name and address is shown below.

2.  Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

Submitted by:

_____
Steve Morris
Morris Peterson
300 S. 4th Street, #900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Attorneys for Plaintiff

By: _____ ALYSE HAMILTON _____
    Deputy Clerk                      Date
    Regional Justice Center
    200 Lewis Avenue
    Las Vegas, NV 89155

**NOTE: When service is by publication, add a brief** SUMMONS MERRILL LYNCH.doc/4/23/2009 **statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

ORIGINAL        BY HAND
                      5/5/09

1    SUMM
2    MORRIS PICKERING
     Steve Morris, Nev. Bar No. 1543
3    Email: sm@morrislawgroup.com
     Jared M. Sechrist, Bar No. 10439
4    Email: jms@morrislawgroup.com
     900 Bank of America Plaza
5    300 South Fourth Street
     Las Vegas, NV 89101
6    Telephone: (702) 474-9400
7    Facsimile: (702) 474-9422

8    Marc E. Kasowitz (pro hac vice pending)
     David M. Friedman (pro hac vice pending)
9    Jed I. Bergman (pro hac vice pending)
     Cara M. Ciuffani (pro hac vice pending)
10   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
11   1633 Broadway
     New York, New York 10019
12   Telephone: (212) 506-1700
     Facsimile: (212) 500-3425
13

14   Attorneys for Plaintiff
     FONTAINEBLEAU LAS VEGAS LLC
15

16                    DISTRICT COURT
                   CLARK COUNTY, NEVADA
17                                            A 588636
                                        CASE NO.:
18   FONTAINEBLEAU LAS VEGAS LLC,
     individually and as successor by merger to   DEPT. NO:   XIII
19   FONTAINEBLEAU LAS VEGAS II, LLC,
                            Plaintiff(s),
20
                     -vs-
21
     BANK OF AMERICA, N.A.; MERRILL
22   LYNCH CAPITAL CORPORATION;
     JPMORGAN CHASE BANK, N.A.;
23   BARCLAYS BANK PLC; DEUTSCHE
     BANK TRUST COMPANY AMERICAS;
24   THE ROYAL BANK OF SCOTLAND
     PLC; SUMITOMO MITSUI BANKING
25   CORPORATION NEW YORK; BANK OF
     SCOTLAND; HSH NORDBANK AG, NEW
26   YORK BRANCH; CAMULOS MASTER
27   FUND LP; MB FINANCIAL BANK, N.A.,
28
                      Defendant(s).

                   SUMMONS - CIVIL

**SUMMONS - CIVIL**

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

**TO DEFENDANT ROYAL BANK OF SCOTLAND PLC:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

    1.    If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

        (a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

        (b) Serve a copy of your response upon the attorney whose name and address is shown below.

    2.    Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

    3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

    4.    The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

Submitted by

By: _____

*Steve Morris*

    ALYSE HAMILTON

Steve Morris
Morris Peterson
300 S. 4th Street, #900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Attorneys for Plaintiff

    Deputy Clerk        Date
    Regional Justice Center
    200 Lewis Avenue
    Las Vegas, NV 89155

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

## AFFIDAVIT OF SERVICE

STATE OF           )
                   )    ss:
COUNTY OF          )

_____, being duly sworn, says: That at all times herein affiant was and is over 18 years of age, not a party to nor interested in the proceeding in which this affidavit is made. That affiant received _____ copy(ies) of the Summons and Complaint, _____ on the _____ day of _____, 20_____ and served the same on the _____ day of _____, 20_____ by:

### (Affiant must complete the appropriate paragraph)

1.   Delivering and leaving a copy with the Defendant _____ at (state address) _____

2.   Serving the Defendant _____ by personally delivering and leaving a copy with _____, a person of suitable age and discretion residing at the Defendant's usual place of abode located at (state address) _____

     **[Use paragraph 3 for service upon agent, completing (a) or (b)]**

3.   Serving the Defendant _____ by personally delivering and leaving a copy at (state address) _____

     (a)   With _____ as _____, an agent lawfully designated by statute to accept service of process;

     (b)   With _____, pursuant to NRS 14.020 as a person of suitable age and discretion at the above address, which address is the address of the resident agent as shown on the current certificate of designation filed with the Secretary of State.

4.   Personally depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope, postage prepaid (Check appropriate method):

☐ Ordinary mail
☐ Certified mail, return receipt requested
☐ Registered mail, return receipt requested

1    addressed to the Defendant _____ at Defendant's last known address which is

2    (state address) _____

3

4    I declare under penalty of perjury under the law of the State of Nevada that the

5    foregoing is true and correct.

6    EXECUTED this _____ day of _____, 20_____.

7

8                       _____

9                       Signature of person making service

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL

1  SUMM
   MORRIS PICKERING
2  Steve Morris, Nev. Bar No. 1543
3  Email: sm@morrislawgroup.com
   Jared M. Sechrist, Bar No. 10439
4  Email: jms@morrislawgroup.com
   900 Bank of America Plaza
5  300 South Fourth Street
   Las Vegas, NV 89101
6  Telephone: (702) 474-9400
7  Facsimile: (702) 474-9422

8  Marc E. Kasowitz (pro hac vice pending)
   David M. Friedman (pro hac vice pending)
9  Jed I. Bergman (pro hac vice pending)
   Cara M. Ciuffani (pro hac vice pending)
10 KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
11 1633 Broadway
   New York, New York 10019
12 Telephone: (212) 506-1700
   Facsimile: (212) 500-3425
13
14 Attorneys for Plaintiff
   FONTAINEBLEAU LAS VEGAS LLC
15
16                     DISTRICT COURT
                  CLARK COUNTY, NEVADA
17
18 FONTAINEBLEAU LAS VEGAS LLC,         CASE NO.:   A 5 8 8 6 3 6
   individually and as successor by merger to       X I I I
19 FONTAINEBLEAU LAS VEGAS II, LLC,     DEPT. NO:
20                     Plaintiff(s),
              -vs-
21
   BANK OF AMERICA, N.A.; MERRILL
22 LYNCH CAPITAL CORPORATION;
23 JPMORGAN CHASE BANK, N.A.;
   BARCLAYS BANK PLC; DEUTSCHE
24 BANK TRUST COMPANY AMERICAS;
   THE ROYAL BANK OF SCOTLAND
25 PLC; SUMITOMO MITSUI BANKING
26 CORPORATION NEW YORK; BANK OF
   SCOTLAND; HSH NORDBANK AG, NEW
27 YORK BRANCH; CAMULOS MASTER
   FUND LP; MB FINANCIAL BANK, N.A.,
28
                   Defendant(s).

                     SUMMONS - CIVIL

## SUMMONS - CIVIL

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO DEFENDANT SUMITOMO MITSUI BANKING CORP. NEW YORK:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.  If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

    (a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

    (b) Serve a copy of your response upon the attorney whose name and address is shown below.

2.  Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

Submitted by

Steve Morris                        By: _____
Morris Peterson                         ALYSE HAMILTON
300 S. 4th Street, #900             Deputy Clerk              Date
Las Vegas, Nevada 89101             Regional Justice Center
Telephone: (702) 474-9400           200 Lewis Avenue
Attorneys for Plaintiff             Las Vegas, NV 89155

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

ORIGINAL

1  **SUMM**
   **MORRIS PICKERING**
2  Steve Morris, Nev. Bar No. 1543
3  Email: sm@morrislawgroup.com
   Jared M. Sechrist, Bar No. 10439
4  Email: jms@morrislawgroup.com
   900 Bank of America Plaza
5  300 South Fourth Street
   Las Vegas, NV 89101
6  Telephone: (702) 474-9400
7  Facsimile: (702) 474-9422

8  Marc E. Kasowitz (*pro hac vice pending*)
   David M. Friedman (*pro hac vice pending*)
9  Jed I. Bergman (*pro hac vice pending*)
   Cara M. Ciuffani (*pro hac vice pending*)
10 KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
11 1633 Broadway
   New York, New York 10019
12 Telephone: (212) 506-1700
   Facsimile: (212) 500-3425
13

14 Attorneys for Plaintiff
   FONTAINEBLEAU LAS VEGAS LLC
15

16                          DISTRICT COURT
                       CLARK COUNTY, NEVADA        A 588636
17                                                      X III
18 FONTAINEBLEAU LAS VEGAS LLC,         CASE NO.:
19 individually and as successor by merger to
   FONTAINEBLEAU LAS VEGAS II, LLC,     DEPT. NO:
20                           Plaintiff(s),
                    -vs-
21
22 BANK OF AMERICA, N.A.; MERRILL
   LYNCH CAPITAL CORPORATION;
23 JPMORGAN CHASE BANK, N.A.;
   BARCLAYS BANK PLC; DEUTSCHE
24 BANK TRUST COMPANY AMERICAS;
   THE ROYAL BANK OF  SCOTLAND
25 PLC; SUMITOMO MITSUI BANKING
   CORPORATION NEW YORK; BANK OF
26 SCOTLAND; HSH NORDBANK AG, NEW
27 YORK BRANCH; CAMULOS MASTER
   FUND LP; MB FINANCIAL BANK, N.A.,
28
                           Defendant(s).

                    **SUMMONS - CIVIL**

NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.

**TO DEFENDANT BANK OF SCOTLAND:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.   If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following;

(a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

(b) Serve a copy of your response upon the attorney whose name and address is shown below.

2.   Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.   If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.   The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

EDWARD A. FRIEDLAND
CLERK OF THE COURT

APR 22 2009

Submitted by

Steve Morris
Morris Peterson
300 S. 4th Street, #900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Attorneys for Plaintiff

By: _____  ALYSE HAMILTON
Deputy Clerk                          Date
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

# AFFIDAVIT OF SERVICE

STATE OF        )
                )  ss:
COUNTY OF     )

_____, being duly sworn, says: That at all times herein affiant was and is over 18 years of age, not a party to nor interested in the proceeding in which this affidavit is made. That affiant received _____ copy(ies) of the Summons and Complaint, _____ on the _____ day of _____, 20_____ and served the same on the _____ day of _____, 20_____ by:

**(Affiant must complete the appropriate paragraph)**

1.     Delivering and leaving a copy with the Defendant _____ at (state address) _____

2.     Serving the Defendant _____ by personally delivering and leaving a copy with _____, a person of suitable age and discretion residing at the Defendant's usual place of abode located at (state address) _____

    **[Use paragraph 3 for service upon agent, completing (a) or (b)]**

3.     Serving the Defendant _____ by personally delivering and leaving a copy at (state address) _____

    (a)     With _____ as _____, an agent lawfully designated by statute to accept service of process;

    (b)     With _____, pursuant to NRS 14.020 as a person of suitable age and discretion at the above address, which address is the address of the resident agent as shown on the current certificate of designation filed with the Secretary of State.

4.     Personally depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope, postage prepaid (Check appropriate method):

          ☐ Ordinary mail
          ☐ Certified mail, return receipt requested
          ☐ Registered mail, return receipt requested

1  addressed to the Defendant _____ at Defendant's last known address which is

2  (state address) _____

3

4  I declare under penalty of perjury under the law of the State of Nevada that the

5  foregoing is true and correct.

6  EXECUTED this _____ day of _____, 20_____.

7

8  _____

9  Signature of person making service

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALENDARED

10/12/09   LD   to file motion to
DATE      INITIALS      REMAND.

Scanned by

MAY 1 3 2009

Fontainebleau v. BofA
SM JMS                    3273-001
Client: Email

# EXHIBIT D

1  MORRIS PETERSON
   Steve Morris, Bar No. 1543
2  Email: sm@morrislawgroup.com
   Rex D. Garner, Bar No. 9401
3  Email: rdg@morrislawgroup.com
   900 Bank of America Plaza
4  300 South Fourth Street
   Las Vegas, NV 89101
5  Telephone: (702) 474-9400
   Facsimile: (702) 474-9422
6
7  Attorneys for Plaintiff
   FONTAINEBLEAU LAS VEGAS LLC
8
                UNITED STATES DISTRICT COURT
9
                    DISTRICT OF NEVADA
10
11 FONTAINEBLEAU LAS VEGAS LLC,     )  Case No: 2:09-cv-860-RLJ-GWF
   individually and as successor by merger )
12 to FONTAINEBLEAU LAS VEGAS II,   )
   LLC,                             )  RULE 41(a)(1) DISMISSAL
13                                  )
              Plaintiff,            )
14                                  )
   v.                               )
15                                  )
   BANK OF AMERICA, N.A.; MERRILL   )
16 LYNCH CAPITAL CORPORATION;       )
   JPMORGAN CHASE BANK, N.A.;       )
17 BARCLAYS BANK PLC; DEUTSCHE      )
   BANK TRUST COMPANY AMERICAS;     )
18 THE ROYAL BANK OF SCOTLAND       )
   PLC; SUMITOMO MITSUI BANKING     )
19 CORPORATION NEW YORK; BANK       )
   OF SCOTLAND; HSH NORDBANK AG,    )
20 NEW YORK BRANCH; MB FINANCIAL    )
   BANK, N.A.,                      )
21                                  )
              Defendants.           )
22 _____)
23
24
25
26
27
28

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1    PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 41(a)(1),

2  plaintiff Fontainebleau Las Vegas LLC hereby voluntarily dismisses this action

3  without prejudice.  The Amended Complaint was filed on May 12, 2009 in the

4  Eighth Judicial District Court of Clark County Nevada and was removed to this

5  Court on May 13, 2009.  At this time no defendant has answered or filed a

6  summary judgment motion.

7                                    MORRIS PETERSON

8

9

10  By _____
                      Steve Morris, Bar No. 1543
11                    Rex D. Garner, Bar No. 9401
                      900 Bank of America Plaza
12                    300 South Fourth Street
                      Las Vegas, NV 89101
13
                      Of Counsel:
14
                      Marc E. Kasowitz
15                    David M. Friedman
                      Jed I. Bergman
16                    Cara M. Ciuffani
                      KASOWITZ, BENSON, TORRES &
17                         FRIEDMAN LLP
18                    1633 Broadway
                      New York, New York 10019
19
                      Attorneys for Plaintiff
20                    FONTAINEBLEAU LAS VEGAS LLC

21

22

23

24

25

26

27

28

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

                                    Page 2 of 4

1

## CERTIFICATE OF SERVICE

2          Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada

3   Electronic Filing Procedures, I certify that I am an employee of MORRIS

4   PETERSON, and that on June 9, 2009, the following documents were served via

5   electronic service: **RULE 41(a)(1) DISMISSAL**

6   TO:

7

8   Attorneys for JP Morgan Chase Bank,          Attorneys for Bank of Scotland PLC
    N.A., Barclays Bank PLC, Deutsche Bank
9   Trust Company Americas, and The Royal        Stanley W. Parry
    Bank of Scotland PLC                         Michael M. Miles
                                                 BALLARD SPAHR ANDREWS &
10  Dennis L. Kennedy                            INGERSOLL, LLP
    Sara E. Harmon                               100 North City Parkway, Suite 1750
11  Brandon P. Kemble                            Las Vegas, NV 89106-4617
    BAILEY KENNEDY                               Facsimile: (702) 471-7070
12  8984 Spanish Ridge Avenue
13  Las Vegas, Nevada 89148-1302                 Anthony L. Paccione
    Facsimile No.: (702) 562-8821                KATTEN MUCHIN ROSENMAN LLP
14                                               575 Madison Avenue
                                                 New York, New York 10022
15                                               Facsimile: (212) 840-8776

16

17  Attorneys for Sumitomo Mitsui Banking        Attorneys for Bank of America, N.A.
    Corporation                                  and Merrill Lynch Capital Corporation
18
    Randolph L. Howard                           Rodney M. Jean
19  Peter D. Navarro                             Lionel Sawyer & Collins
    Kolesar & Leatham, Chtd.                     300 South 4th Street, Suite 1700
20  3320 W. Sahara Avenue, Suite 380             Las Vegas, Nevada 89101
    Las Vegas, Nevada 89102                      Facsimile: (702) 383-8845
21  Facsimile No.: (702) 362-9472

22  Jean-Marie L. Atamian
    Jason Kirschner
23  Mayer Brown LLP
    1675 Broadway
24  New York, NY 10019-5820
    Facsimile: (212) 262-1910
25

26

27

28

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 3 of 4

Case 2:09-cv-00860-RLH-GWF    Document 33    Filed 06/09/2009    Page 4 of 4

1  Attorneys for Defendant HSH Nordbank
   AG, New York Branch
2
   Deanna L. Forbush
3  John A. Hunt
   Bert Wuester Jr.
4  Fox Rothschild LLP
   3800 Howard Hughes Parkway, Suite 500
5  Las Vegas, Nevada 89 169
   Facsimile No: (702) 597-5503
6
7          I further certify that I am familiar with the firm's practice of collection

8  and processing documents for mailing; that in accordance therewith, I caused the

9  above-named document to be deposited with the U.S. Postal Service on June 10,

10 2009, at Las Vegas, Nevada, in a sealed envelope, with first class postage prepaid,

11 on the date and to the addressee(s) shown below:

12

13 MB Financial Bank, N.A.                Attorneys for JP Morgan Chase Bank,
   6111 River Road                        N.A., Barclays Bank PLC, Deutsche Bank
14 Rosemont, Illinois 60018               Trust Company Americas, and The Royal
                                          Bank of Scotland PLC
15 Peter J. Roberts
   Robert W. Glantz                       Thomas C. Rice
16 Shaw Gussis                            David Woll
   321 North Clark Street - Suite 800     SIMPSON THACHER & BARTLETT LLP
17 Chicago, Illinois  60654               425 Lexington Avenue
                                          New York, New York 10017
18                                        Facsimile No.: (212) 455-2502

19                                        Attorneys for Defendant HSH Nordbank
20                                        AG, New York Branch

21                                        Aaron Rubinstein
22                                        Phillip A. Geraci
                                          Kaye Scholer LLP
23                                        425 Park Avenue
                                          New York, New York 10022
24                                        Facsimile: (212) 836-8689

25

26

27                                        By

28

MORRIS PETERSON
ATTORNEYS AT LAW
100 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 4 of 4